STATE OF NORTH CAROLINA v. JAMES CALVIN WILLIAMS

No. 89

(Filed 28 November 1978)

1. **Kidnapping § 1; Criminal Law § 26.5— felonies as purpose of kidnapping— conviction of felonies and kidnapping**

     The principle that when a criminal offense in its entirety is an essential element of another offense a defendant may not be punished for both offenses did not prohibit the punishment of defendant for two offenses of kidnapping and for robberies and other felonies which constituted the purposes for removal of the victims, since in order to prove kidnapping it was only necessary to prove a *purpose* of robbery or the other felonies and not the commission of the felonies themselves.

2. **Indictment and Warrant § 9.3— allegation of matter not element of crime— surplusage**

     Allegation of matter which, in law, is not an element of the crime and not necessary to be proved may be treated as surplusage even if the State and the trial judge mistakenly believe the matter to be an essential element.

3. **Kidnapping § 1; Criminal Law § 26.5— single offense of kidnapping— mitigating factors— punishment for kidnapping, assault and rape— no double jeopardy**

     Although the State and the trial judge treated "serious injury" arising out of the felonious assault of one victim and the "sexual assault" arising out of the rape of the second victim as elements, respectively, of kidnappings of the two victims, the punishment of defendant for the kidnappings and also for the felonious assault and the rape did not offend the Double Jeopardy or Law of the Land Clauses since (1) G.S. 14-39 creates only a single offense of kidnapping, and the felonious assault and rape were not elements of kidnapping, and (2) the factors listed in G.S. 14-39(b)— release in a safe place and absence of sexual assault or serious injury— are mitigating rather than aggravating and result in a lesser rather than more severe sentence.

4. **Kidnapping § 2— jury determination of guilt— determination of mitigating factors by judge**

     Normally, a jury need only determine whether a defendant has committed the substantive offense of kidnapping as defined in G.S. 14-39(a), and the existence or non-existence of the factors set forth in G.S. 14-39(b) should be determined by the trial judge.

5. **Kidnapping § 2— mitigating factors— evidence at trial— sentencing hearing**

     The trial judge in a kidnapping case may make a determination as to whether the statutory mitigating factors exist from evidence adduced at the trial or at the sentencing hearing provided for in G.S. 15A-1334 following the trial, or at both proceedings.

State v. Williams

6. **Kidnapping § 2— punishment—mitigating factors—burden of proof—findings**

If evidence of the existence of mitigating factors has been presented either at the kidnapping trial or at both proceedings, and the judge is satisfied by a preponderance of the evidence, the burden being upon the defendant to so satisfy him, that the kidnapping victim was released in a safe place and was neither sexually assaulted nor seriously injured, he shall so find and may not impose a sentence on the kidnapping conviction of more than 25 years or a fine of up to $10,000, or both. If the judge is not so satisfied, he must so state on the record, in which case he may impose a sentence of not less than 25 years nor more than life imprisonment.

7. **Kidnapping § 2— punishment—absence of evidence of mitigating factors**

If no evidence at the kidnapping trial or at the sentencing hearing is adduced tending to show the existence of the statutory mitigating factors, then the judge, without making findings, may proceed to impose a sentence of not less than 25 years nor more than life imprisonment.

8. **Kidnapping § 2— punishment—stipulation of mitigating factors**

In any kidnapping case, the State may stipulate to the presence of all the mitigating factors and thereby avoid determination of the question.

9. **Kidnapping § 2; Constitutional Law § 28— determination of sentence—sentencing hearing—findings by court—due process**

A defendant convicted of kidnapping is accorded due process on the question of sentencing by the procedures prescribed for the sentencing hearing in G.S. 15A-1334(b) and the requirement that the trial judge make findings as to mitigating factors in imposing the sentence.

10. **Kidnapping § 2; Constitutional Law § 57— punishment—mitigating factors—no right to jury trial**

A defendant in a kidnapping case is not entitled to a jury trial on the question of mitigating factors under either the State or Federal Constitution, since the factors to be found relate solely to the severity of the sentence and not to any element of the offense itself.

11. **Kidnapping § 2; Constitutional Law § 28— punishment—mitigating factors—burden of proof—due process**

It is not violative of due process to place the burden of persuasion as to the existence of mitigating factors in a kidnapping case upon the defendant, since proof of these factors does not negate any element of the crime of kidnapping which the State must prove.

12. **Kidnapping § 2— punishment—mitigating factors—separate criminal offenses—hearing not required**

When the question of the existence of mitigating factors in a kidnapping case has, in effect, been submitted to the jury in the form of separate criminal charges tried jointly with the kidnapping case, and the jury finds defendant guilty of the separate charges, there is no need for the judge to make separate findings, since the non-existence of mitigating factors will already have been determined beyond a reasonable·doubt.

**13. Constitutional Law § 79— cruel and unusual punishment—sentence within statutory maximum**

A sentence within the maximum authorized by statute is not cruel and unusual in a constitutional sense, unless the punishment provisions of the statute itself are unconstitutional.

**14. Constitutional Law § 81— cruel and unusual punishment—consecutive sentences**

The imposition on defendant of consecutive sentences of life imprisonment for rape, life imprisonment for kidnapping, life imprisonment for armed robbery, 40 years for another armed robbery and 20 years for felonious assault did not constitute cruel and unusual punishment and did not deny defendant equal protection of the laws.

**15. Criminal Law § 102.6— remark by private prosecutor—no denial of fair trial**

Where the results of tests performed on the State's physical evidence in Raleigh were inconclusive, the physical evidence was excluded upon objection by defendant, and the private prosecutor properly objected to defense counsel's jury argument concerning the absence of such physical evidence from the trial, the private prosecutor's additional inaccurate remark, "Nothing was sent to Raleigh," did not deny defendant a fair trial by suggesting the existence of other incriminating evidence, since the jury could have inferred from the remark the non-existence of other evidence as easily as the existence of such evidence, the remark was not extreme or clearly calculated to prejudice the jury, and defendant failed to object or request that the jury not consider it.

**16. Criminal Law § 122.9— jury argument—coaching by defense counsel—impropriety cured by court's instruction**

Any impropriety in the private prosecutor's remark during jury argument that "the defense lawyer must have had some sessions with him, because he handled himself . . ." and in his remark after defendant's objection that a defense lawyer would be remiss if he hadn't talked with his client was cured when the court instructed the jury to disregard such remarks.

Justice BRITT took no part in the consideration or decision of this case.

BEFORE *Howell, J.*, at the 23 May 1977 Schedule "B" Criminal Session of MECKLENBURG Superior Court and on bills of indictment formally sufficient defendant was tried and convicted of first degree rape, two counts of kidnapping, two counts of armed robbery, and assault with a deadly weapon with intent to kill inflicting serious bodily injury. He received sentences of life imprisonment for the rape, one of the kidnappings and one of the armed robberies, a sentence of 40 years for the other armed robbery, and a sentence of 20 years for the felonious assault, all to be served consecutively. He also received a life sentence for the

other kidnapping to be served concurrently with the first kidnapping sentence. He appeals under G.S. 7A-27(a), and we allowed his motion to bypass the Court of Appeals in the robbery and assault cases. This case was argued as No. 119 at the Fall Term 1977.

*Rufus L. Edmisten, Attorney General, by Thomas B. Wood, Assistant Attorney General, for the State.*

*Michael J. Blackford, Attorney for defendant.*

EXUM, Justice.

The state's evidence tends to show that on 12 January 1977 defendant kidnapped Jessie King Harrison, Jr., and Marilyn Walters as they were leaving work around 6:40 p.m. in Charlotte. After taking them to a deserted place defendant robbed both victims at gunpoint, shot Harrison twice causing serious injury but not death, and raped Walters. The defense was alibi.

The most important question presented is whether it is permissible under our kidnapping statute, G.S. 14-39,[1] to sentence this defendant for the rape of Walters, the felonious assault against Harrison and each of the armed robberies, while at the same time sentencing him to life imprisonment for the kidnappings of Walters and Harrison, without violating the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, and the Law of the Land Clause of the North Carolina Constitution. We conclude that it is. Other questions raised are whether defendant's sentences are violative of the Cruel and Unusual Punishment Clause of the Eighth Amendment

---

1. The statute reads, in relevant part, as follows:

"Kidnapping.—(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

(1) Holding such other person for ransom or as a hostage or using such other person as a shield; or

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person.

(b) Any person convicted of kidnapping shall be guilty of a felony and shall be punished by imprisonment for not less than 25 years nor more than life. If the person kidnapped, as defined in subsection (a) was released by the defendant in a safe place and had not been sexually assaulted or seriously injured, the person so convicted shall be punished by imprisonment for not more than 25 years, or by a fine of not more than ten thousand dollars ($10,000), or both, in the discretion of the court."

and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. We conclude they are not. Less significant questions, easily answered against defendant upon well-established legal principles, are whether defendant was denied a fair trial by remarks made by a privately employed prosecutor—one during defendant's closing argument to the jury and another during the prosecutor's own summation.

I

Both kidnapping indictments charge that defendant kidnapped his victims for the "purpose of facilitating the commission of a felony, armed robbery." The Harrison indictment adds "and doing serious bodily harm to him." The Walters indictment adds "and rape and terrorizing her."[2] One of the essential elements of kidnapping under G.S. 14-39 is that the confinement, restraint, or removal be for the purpose of, among other alternatives, "facilitating the commission of any felony." In accordance with this requirement, the trial judge instructed the jury in the Harrison kidnapping case that it must find, among other elements, a "purpose of facilitating commission of a robbery or doing serious bodily harm" and, in the Walters kidnapping case, a "purpose of facilitating the commission of a robbery or a rape."

[1] Defendant argues that under the statute the armed robberies, the felonious assault and the rape were essential elements of the kidnapping charges. Relying on the principle that when a criminal offense in its entirety is an essential element of another offense a defendant may not be punished for both offenses,[3] he

---

2. The indictments read in full as follows:

"THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 12th day of January, 1977, in Mecklenburg County James Calvin Williams unlawfully and wilfully did feloniously kidnap Jessie King Harrison, a person who had attained the age of sixteen years, by unlawfully confining him and restraining him and removing him from one place to another, without his consent, and for the purpose of facilitating the commission of a felony, armed robbery, and doing serious bodily injury to him. The person kidnapped was seriously injured during the kidnapping and not released in a safe place following the kidnapping."

"THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 12th day of January, 1977, in Mecklenburg County James Calvin Williams unlawfully and wilfully did feloniously kidnap Marilyn Lewis Walters, a person who had attained the age of sixteen years, by unlawfully confining her and restraining her and removing her from one place to another, without her consent, and for the purpose of facilitating the commission of a felony, armed robbery and rape and terrorizing her. The person kidnapped was sexually assaulted during the kidnapping and not released in a safe place following the kidnapping."

3. This principle is frequently applied in felony-murder cases when the underlying felony is used as an essential element of first degree murder. In such cases punishment for the murder precludes punishment also for the underlying felony. See, e.g., State v. Williams, 284 N.C. 67, 199 S.E. 2d 409 (1973); State v. Carroll, 282 N.C. 326, 193 S.E. 2d 85 (1972). The principle, however, is not limited to felony-murder, but applies in any situation in which one criminal offense is in its entirety an essential element of another offense. State v. Midyette, 270 N.C. 229, 154 S.E. 2d 66 (1967). The basis for each application is the constitutional prohibition against double jeopardy. Amendments V and XIV, U.S. Const.; Art. I, § 19, N.C. Const. See cases cited in 4 N.C. Index 3d, Crim. Law, §§ 26-26.9.

contends that he may not be punished for both the kidnapping offenses and the other offenses which constituted the purposes for the removals. This same argument was raised and rejected in *State v. Dammons*, 293 N.C. 263, 237 S.E. 2d 834 (1977). In *Dammons*, the defendant was convicted of both felonious assault and kidnapping. He moved for an arrest of judgment on the assault charge, arguing that it was an essential element of the kidnapping. The Court found no error in the convictions and sentences for the two separate offenses, stating, *id.* at 275, 237 S.E. 2d at 842-843:

> "In the kidnapping case the felonious assault was alleged in the indictment as being one of the purposes for which defendant removed the victim from one place to another. The felonious assault itself is, therefore, not an element of the kidnapping offense. It was not necessary for the state to prove the felonious assault in order to convict the defendant of kidnapping. It need only have proved that the *purpose* of the removal was a felonious assault. The assault itself vis-a-vis the kidnapping charge is mere evidence probative of the defendant's purpose. The purpose proved would, without the assault itself, sustain conviction under the kidnapping statute but not under the assault statute. The felonious assault is, consequently, a separate and distinct offense. The fact that it was committed during the perpetration of a kidnapping does not deprive it of this character. *State v. Bruce*, 268 N.C. 174, 150 S.E. 2d 216 (1966); *see also State v. Richardson*, 279 N.C. 621, 185 S.E. 2d 102 (1971)."

Here the same considerations apply. The kidnapping indictments charge that defendant confined, restrained and removed his victims from one place to another for the purpose of facilitating the commission of robberies and other felonies. In order to prove kidnapping it was only necessary to prove a *purpose* of robbery or the other felonies and not the commission of the felonies themselves. The principle relied on by defendant simply does not apply in this context.

[3] Defendant's next argument has not yet been considered by this Court.[4] It arises from the allegations in the Harrison indict-

---

4. It was not considered in *Dammons* where error was found in the kidnapping case and a new trial awarded. If it was argued we did not so perceive it.

State v. Williams

ment that the "person kidnapped was seriously injured" and in
the Walters indictment that the "person kidnapped was sexually
assaulted." The trial judge instructed the jury that in order to
convict defendant of "aggravated" kidnapping[5] of Harrison it
must find, among other things, that Harrison "had been seriously
injured." Similarly the trial judge instructed that in order to con-
vict defendant of the "aggravated" kidnapping[6] of Walters it must
find, among other things, that Walters "had been sexually
assaulted." Defendant argues that the state by its allegations and
the trial judge by his instructions have, in effect, made the
felonious assault on Harrison and the rape of Walters an essential
element of the kidnapping offense in which each, respectively,
was the victim. Therefore, under the principles discussed above
defendant contends that he cannot be sentenced separately for
the rape of Walters and the felonious assault of Harrison and that
judgment in these cases must be arrested if the sentences on the
kidnapping convictions are to stand.

We recognize that infliction of serious injury may occur
under circumstances not amounting to a felonious assault;[7] and,
likewise, a "sexual assault" need not necessarily be a rape.[8]
Nevertheless it seems clear that the serious injury referred to in
the Harrison kidnapping and the sexual assault in the Walters
kidnapping were in fact the same incidents upon which the
sentences for the felonious assault and the rape convictions were,
respectively, imposed. In *State v. Midyette, supra* n. 3, 270 N.C.
229, 154 S.E. 2d 66, two indictments were consolidated for trial.
In Case No. 483 defendant was charged with assault with a dead-
ly weapon upon one Robertson on 25 June 1966 by shooting him
with a .22 caliber pistol with intent to kill inflicting serious in-
juries. In Case No. 484 defendant was charged with resisting a
public officer, to wit, Robertson, in the discharge of his duty,
namely, attempting to arrest the defendant, by firing at and hit-
ting the officer with bullets from a .22 caliber pistol. Defendant
was convicted and sentenced on both offenses. On appeal this
Court held that judgment in the resisting arrest case, No. 484,

5. The only kidnapping offense with reference to Harrison submitted to the jury.

6. Again the only kidnapping offense with reference to Walters submitted to the jury.

7. For example, an assault inflicting serious injury without more is a misdemeanor under G.S. 14-33(b)(1).

8. For example, an assault with intent to commit rape under G S. 14-22.

must be arrested. The Court said, 270 N.C. at 233-34, 154 S.E. 2d at 70:

> "The defendant was convicted and sentenced in Pamlico County Case No. 483 for the crime of assault with a deadly weapon upon W. I. Robertson, on 25 June 1966, by shooting him with a .22 caliber pistol. He could not thereafter be lawfully indicted, convicted and sentenced a second time for that offense, or for any other offense of which it, in its entirety, is an essential element. *State v. Birckhead*, 256 N.C. 494, 497, 124 S.E. 2d 838, 6 A.L.R. 3rd 888.

> "By the allegations it elects to make in an indictment, the State may make one offense an essential element of another, though it is not inherently so, as where an indictment for murder charges that the murder was committed in the perpetration of a robbery. In such case, a showing that the defendant has been previously convicted, or acquitted, of the robbery so charged will bar his prosecution under the murder indictment. *State v. Bell*, 205 N.C. 225, 171 S.E. 50.

> . . . .

> "In the present instance, the State has, by the allegations in the indictment in Pamlico County Case No. 484, made the identical assault for which the defendant was convicted in Case No. 483, an element of the offense, resistance of a public officer, charged in the second indictment. It has alleged this same assault was the means by which the officer was resisted. Under this indictment, the State could not convict the defendant of resistance of a public officer in the performance of his duty without proving the defendant guilty of the exact offense for which he has been convicted and sentenced in Case No. 483, the shooting of W. I. Robertson with bullets from a .22 caliber pistol on 25 June 1966."

[2] The state here included the "serious injury" arising out of the felonious assault and the "sexual assault" arising out of the rape as elements, respectively, of the Harrison and Walters kidnappings and the trial judge treated them as such. The question still remains whether they were necessary elements of kidnapping under G.S. 14-39(a). We recognize that this Court said in *Midyette*: "By the allegations it elects to make in an indictment,

the State may make one offense an essential element of another, though it is not inherently so, as where an indictment for murder charges that the murder was committed in the perpetration of a robbery." This language does not mean, however, that every matter in an indictment is a necessary element of the crime merely because it is alleged to be so. Allegation of a matter which, in law, is not an element of the crime and not necessary to be proved may be treated as surplusage even if the state and the trial judge mistakenly believe the matter to be an essential element. *See State v. Stallings*, 267 N.C. 405, 148 S.E. 2d 252 (1966). The language in *Midyette* instead refers to those situations in which the state elects to prosecute on a legal theory which necessarily includes another criminal offense as an element of the crime being prosecuted although some other theory might have been, theoretically at least, available (the most common example being when a first degree murder prosecution proceeds on a felony-murder theory rather than a theory involving premeditation and deliberation).

Therefore, defendant's argument must rest not only on the proposition that the state and the trial judge treated the infliction of serious injury and the sexual assault as necessary elements, respectively, in the two kidnapping cases but also on the proposition that G.S. 14-39 mandates this treatment. Defendant argues that the statute creates two kidnapping offenses: simple kidnapping, the punishment for which may not exceed 25 years, and aggravated kidnapping, the punishment for which is not less than 25 years nor more than life. He contends that to prove aggravated kidnapping so as to subject defendant to a punishment of life imprisonment the state must prove not only restraint, confinement or removal for one of those purposes designated in the statute but it must also prove that the person kidnapped was either sexually assaulted, seriously injured, or not released in a safe place. Support for this construction abounds everywhere but in the language of the statute itself. It has recently been adopted by a divided panel of the Court of Appeals in *State v. Gunther*, 38 N.C. App. 279, 248 S.E. 2d 97 (1978). The state's trial judges have incorporated a variation of it in their pattern jury instructions for criminal cases. N.C.P.I. — Crim. 210.10.[9] This Court has itself used

---

9. The instruction divides kidnapping into two degrees: "Kidnapping and mitigated kidnapping." In order to prove kidnapping, according to this instruction, the state must prove, among other things, that the victim was either "released in an unsafe place," "sexually assaulted," or "had been seriously injured." These matters are not necessary to be proved for a conviction of "mitigated kidnapping."

the term "aggravated kidnapping" in prior cases. *State v. Dammons, supra*, 293 N.C. 263, 237 S.E. 2d 834; *State v. Barrow*, 292 N.C. 227, 232 S.E. 2d 693 (1977). We did say, however, without comment or elaboration, in *State v. Banks*, 295 N.C. 399, 406-07, 245 S.E. 2d 743, 749 (1978):

> "We note in passing that some of our opinions refer to the crime defined in G.S. 14-39A as 'aggravated kidnapping.' This is a misnomer. The proper term for the crime there defined is 'kidnapping.' Subsection (b) of the statute states the punishment for kidnapping as well as a lesser punishment when certain mitigating circumstances appear."

The construction of G.S. 14-39 advanced by defendant has never been adopted by this Court. We now reject it.

General Statute 14-39(a) defines kidnapping as (1) an unlawful, nonconsensual restraint, confinement or removal from one place to another (2) for the purpose of committing or facilitating the commission of certain specified acts. On its face, this is all the statute requires for a *conviction* of kidnapping.

General Statute 14-39(b) prescribes the punishment for one convicted of kidnapping: "Any person convicted of kidnapping shall be guilty of a felony and shall be punished by imprisonment for not less than 25 years nor more than life." The statute goes on, however, to set forth factors that will result in reduced punishment: "If the person kidnapped . . . was released by the defendant in a safe place and had not been sexually assaulted or seriously injured, the person so convicted shall be punished by imprisonment for not more than 25 years, or by a fine of not more than ten thousand dollars ($10,000), or both, in the discretion of the court."

The existence of two different ranges of sentences under G.S. 14-39(b) should not be read as creating two separate offenses. General Statute 14-39(b) by its terms presupposes a conviction for kidnapping, the elements of which are set forth in G.S. 14-39(a). It does not purport to add or subtract elements of the offense. It speaks merely to matters which may be shown in mitigation of punishment. It does not therefore divide the crime of kidnapping into two separate offenses.

There is support elsewhere for interpreting a statute like G.S. 14-39 as creating a single offense of kidnapping. In *Smith v. United States*, 360 U.S. 1 (1959), the Supreme Court considered the then federal kidnapping statute, which read in relevant part as follows, *id.* at 7: " 'Whoever knowingly transports in interstate . . . commerce any person who has been unlawfully . . . kidnapped . . . shall be punished (1) by death *if the kidnapped person has not been liberated unharmed*, and if the verdict of the jury shall so recommend. . . .' " (Emphasis supplied.) At issue in *Smith* was whether defendant had to be prosecuted by an indictment. Defendant had pled guilty to kidnapping on the basis of an information that did not state whether the victim was released unharmed. The Federal Rules of Criminal Procedure required that: " 'An offense which *may* be punished by death *shall* be prosecuted by indictment.' " *Id.* at 6. The government argued that the kidnapping statute created two separate offenses, one capital and one non-capital, and that defendant was charged with the non-capital offense. The Court rejected that argument holding that the statute created a single offense which could be punished by death depending on the evidence presented at trial:

> "Under the statute, the offense is punishable by death if certain proof is introduced at trial. When an accused is charged, as here, with transporting a kidnapped victim across state lines, he is charged and will be tried for an offense which *may* be punished by death. Although the imposition of that penalty will depend on whether sufficient proof of harm is introduced during the trial, that circumstance does not alter the fact that the offense itself is one which *may* be punished by death and thus must be prosecuted by indictment." *Id.* at 8. (Emphasis original.)

The West Virginia Supreme Court has reached the same result in construing a similar state kidnapping statute. *Pyles v. Boles*, 148 W. Va. 465, 135 S.E. 2d 692, *cert. denied*, 379 U.S. 864 (1964); *but see State v. Sewell*, 342 So. 2d 156 (La. 1977) (holding that a similar statute created separate offenses).

Our determination that G.S. 14-39 creates a single offense does not entirely resolve the double jeopardy questions raised by defendant. The statute sets forth factors whose presence or absence may result in a more or less severe sentence. If these are

aggravating or sentence-enhancing factors and if they are identical to some other offense for which defendant was punished, then he may still have received multiple punishments for the same offense.

The United States Supreme Court faced a similar problem recently in *Simpson v. United States*, --- U.S. ---, 55 L.Ed. 2d 70 (1978). Defendants in *Simpson* had been prosecuted for violations of two federal statutes — 18 U.S.C. § 2113 and 18 U.S.C. § 924(c). 18 U.S.C. § 2113(a) defines bank robbery and imposes a punishment for its commission of a fine of not more than $5000 or imprisonment for not more than 20 years, or both. Under 18 U.S.C. § 2113(d), this punishment may be enhanced to a fine of not more than $10,000 or imprisonment for not more than twenty-five years, or both, if the perpetrator "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device." 18 U.S.C. § 924(c) imposes a punishment of not less than one nor more than ten years imprisonment on any person who "uses a firearm to commit any felony for which he may be prosecuted in a court of the United States." Defendants were convicted of violating both 18 U.S.C. § 2113 and 18 U.S.C. § 924(c). They each received an enhanced sentence of 25 years imprisonment under Section 2113(d) and a consecutive 10-year sentence under Section 924(c). The only evidence to support both the enhanced sentence and the Section 924(c) conviction was the fact that handguns were used in the robbery. Defendants argued that the two charges should merge for purposes of sentencing. The Court conceded that cases in which it was possible "to prove violations of two separate criminal statutes with precisely the same factual showing . . . raise the prospect of double jeopardy. . . ." --- U.S. at ---, 55 L.Ed. 2d at 76. It avoided having to decide that question, however, by finding that Congress had not meant for cumulative sentences to be imposed under 18 U.S.C. §§ 2113(d) and 924(c) and remanding for resentencing on that ground.

It is not necessary to meet the similar double jeopardy argument here, either, but on a different ground. The provisions of 18 U.S.C. §§ 2113(d) and 924(c) are, as the Supreme Court noted, "addressed to the same concern and designed to combat the same problem: the use of dangerous weapons — most particularly firearms — to commit federal felonies." --- U.S. at ---, 55 L.Ed.

State v. Williams

2d at 75. The remedy embodied in these provisions is to deter use of firearms in commission of felonies by imposing longer or additional prison sentences when firearms are used.

Different policy considerations are involved in G.S. 14-39. It follows the pattern of the kidnapping provision, § 212.1, of the Model Penal Code, which contains a qualifying provision providing for reduced punishment in kidnapping cases if the victim is "released alive in a safe place prior to trial." The drafters of the Model Penal Code stated that the purpose of this provision is to "maximize the kidnapper's incentive to return the victim alive." Model Penal Code, Tentative Draft No. 11, § 212.1, at 19 (1960). It is reasonable to assume that the General Assembly had a similar purpose in providing reduced punishment under G.S. 14-39(b) when the victim has been released in a safe place and has not been sexually assaulted or seriously injured. Unlike 18 U.S.C. §§ 2113(d) and 924(c), which seek to deter the introduction of a dangerous element in the commission of felonies, G.S. 14-39(b) seeks to reduce the possibility of harm to a victim who is in an already dangerous situation. In other words, it is intended to offer a kidnapper the inducement of a lesser sentence if he refrains from injuring or permitting injury to his victim.

This purpose points to the key distinction between G.S. 14-39(b) and a statute like 18 U.S.C. § 2113(d). Rather than being sentence-enhancing, the factors set forth in G.S. 14-39(b) are sentence-reducing in nature. In subsection (a) of the statute, the General Assembly defines the crime of kidnapping. In the first sentence of subsection (b), it provides the punishment for *this* crime as imprisonment for not less than 25 years nor more than life. It then lists various factors, the presence of which will result in a reduced sentence.

The General Assembly has determined that kidnapping is a serious crime and has set punishment at a term of imprisonment of not less than 25 years nor more than life.[10] Out of concern for the safety of kidnapping victims, however, the General Assembly has set forth certain factors that can result in mitigation of sentence. If a defendant can show that the victim of the crime was released in a safe place and was not sexually assaulted or

---

10. It is noteworthy that before the enactment of new G.S. 14-39 in 1975 life imprisonment had been the prescribed punishment for kidnapping in this state, at least since 1933. *See* G.S. 14-39, 1B General Statutes 360 (1969 Replacement).

seriously injured, then he cannot be imprisoned for more than 25 years. These factors are not elements of a crime; nor are they sentence-enhancing in nature. They can, if shown, result only in a lesser sentence for a defendant. They are in this respect like any other mitigating circumstance or true affirmative defenses, *see, e.g., Patterson v. New York*, 432 U.S. 197 (1977) ("extreme emotional disturbance"); *State v. Caldwell*, 293 N.C. 336, 237 S.E. 2d 742 (1977), *cert. denied*, --- U.S. ---, 55 L.Ed. 2d 780 (1978) (insanity); *Rivera v. Delaware*, 351 A. 2d 561, *app. denied*, 429 U.S. 877 (1976) (insanity), that defendants may take advantage of to reduce or obviate their criminal liability. When the same or similar evidence tends both to show their absence and to prove the commission of some other crime, subjecting a defendant to punishment for the other crime while not reducing his punishment for kidnapping does not offend either the Double Jeopardy or the Law of the Land Clauses.

The General Assembly might have chosen a different statutory structure and a different result might have ensued. The effect of such a different statutory structure can be seen in *Presnell v. State*, 241 Ga. 49, 243 S.E. 2d 496 (1978), in which defendant was convicted at trial of both forcible rape and kidnapping with bodily injury. The Georgia Supreme Court reversed the conviction for rape on grounds of double jeopardy,[11] stating, *id*. at ---, 243 S.E. 2d at 501:

"The only evidence of bodily injury to support the crime of kidnapping with bodily injury . . . is the bodily injury which resulted from the rape. . . . Thus, the convictions for both kidnapping with bodily injury and forcible rape cannot be upheld."

The Georgia court was construing the following statute:

"A person convicted of kidnapping shall be punished by imprisonment for not less than one nor more than 20 years: Provided that a person convicted of kidnapping for ransom shall be punished by life imprisonment or by death; and Provided, further, that if the person kidnapped shall have re-

---

11. It should be noted that the *Presnell* court's basis for finding a double jeopardy violation was a Georgia statute that bars multiple punishment if one crime is included in another as a matter of fact or of law. *See State v. Estevez*, 232 Ga. 316, 206 S.E. 2d 475 (1974). This standard is similar to the one set forth in *Brown v. Ohio*, 432 U.S. 161 (1977), but we do not decide whether it is the same.

ceived bodily injury, the person convicted shall be punished by life imprisonment or death." Ga. Code Ann. § 26-1311 (1978).

This statutory structure is exactly the reverse of North Carolina's. Instead of providing a more severe sentence for the crime of kidnapping and then specifying factors that would reduce this sentence, the Georgia legislature chose to fix a lower sentence for the crime and then to set out aggravating factors that result in increased punishment. Though an application of the Double Jeopardy Clause might be more likely under Georgia's statute than North Carolina's, either is a permissible legislative choice. As the United States Supreme Court has recognized:

"[T]he Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments. . . ." *Brown v. Ohio*, *supra* n. 11, 432 U.S. 161, 165.

[3] Defendant's argument should therefore be rejected because first, G.S. 14-39 creates only a single offense of kidnapping, and second, the factors listed in subsection (b)—release in a safe place and absence of sexual assault or serious injury—are mitigating rather than aggravating and result in a lesser rather than more severe sentence.

II

[4] While not necessary to the decision in this case, we think it desirable to set forth for the guidance of bench and bar procedures which should be followed in applying our interpretation of the kidnapping statute. Normally a jury need only determine whether a defendant has committed the substantive offense of kidnapping as defined in G.S. 14-39(a). The factors set forth in subsection (b) relate only to sentencing; therefore, their existence or non-existence should properly be determined by the trial judge.

[5-7] The judge may make such a determination from evidence adduced at the trial of the kidnapping case itself or at the sentencing hearing provided for in G.S. 15A-1334 following the trial, or at both proceedings. If at either or both proceedings evidence of the existence of the mitigating factors has been presented, the judge must consider this and all other evidence bearing on the

question. If the judge is satisfied by a preponderance of the evidence, the burden being upon the defendant to so satisfy him, that the kidnapping victim was released in a safe place and was neither sexually assaulted nor seriously injured, he shall so find and may not then impose a sentence on the kidnapping conviction of more than 25 years or a fine of up to $10,000, or both.[12] If the judge is not so satisfied, he must so state on the record in which case he may impose a sentence of not less than 25 years nor more than life imprisonment. If no evidence either at trial or at the sentencing hearing is adduced tending to show the existence of the mitigating factors then the judge, without making findings, may proceed to impose a sentence of not less than 25 years nor more than life imprisonment.

[8]  In any case the state may stipulate to the presence of all the mitigating factors and thereby avoid determination of the question.

The procedure here outlined comports with both state and federal constitutional requirements. The procedures prescribed for the sentencing hearing in G.S. 15A-1334(b)[13] accord due process. That the judge rather than the jury makes the crucial factual determinations upon which the ultimate sentence is based does not contravene either state or federal constitutional guarantees of a jury trial in criminal cases. Neither is it violative of constitutional due process to place the burden of persuasion as to the existence of the mitigating factors on the defendant.

[9]  Although G.S. 15A-1334(b) makes inapplicable "formal rules of evidence" at the sentencing hearing, the statute does require that defendant be given an opportunity to confront and cross-examine witnesses against him and to present witnesses and arguments in his own behalf. To this we have added the requirement, solely for purposes of implementing the sentencing provisions of the kidnapping statute, that the trial judge make

---

12. This procedure differs from the one set forth in *Smith v. United States, supra,* 360 U.S. 1, which called for the evidence to be presented at trial. This difference is justified by the different roles played by the jury in the sentencing process. Here, sentencing is entirely a matter for the judge. There, if the jury found that the victim had not been liberated unharmed, it could *recommend the death penalty.*

13. That statute reads: "(b) Proceeding at Hearing.—The defendant at the hearing may make a statement in his own behalf. The defendant and prosecutor may present witnesses and arguments on facts relevant to the sentencing decision and may cross-examine the other party's witnesses. No person other than the defendant, his counsel, the prosecutor, and one making a presentence report may comment to the court on sentencing unless called as a witness by the defendant, the prosecutor, or the court. Formal rules of evidence do not apply at the hearing."

findings. We recognize that findings are not ordinarily required to sustain the imposition of a criminal sentence. To require them in limited circumstances, however, is not new to our jurisprudence.[14] Findings may be required as a matter of due process where the sentence proceeding itself, for example, is a new proceeding apart from the trial of the specified crime which triggered it and where the sentence imposed as a result of the findings is greater than could be imposed upon conviction of the specified crime. In considering the requirements of due process under such a sentence-enhancing procedure[15] the United States Supreme Court in *Specht v. Patterson,* 386 U.S. 605, 610 (1967) said:

> "Due process, in other words, requires that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own. And there must be findings adequate to make meaningful any appeal that is allowed."

The requirements of *Specht* are clearly met here. *See also* the plurality opinion by Mr. Justice Stevens in *Gardner v. Florida,* 430 U.S. 349, 358 (1977).

The extent to which the rules of evidence may be relaxed within the dictates of due process need not now be definitively resolved. Such resolution is best accomplished case by case. In *Specht* the Supreme Court found the sentencing procedure violative of due process essentially because it afforded no hearing at all and because it provided for the use of "hearsay evidence to which the person involved is not allowed access." *Specht v. Patterson,* supra, 386 U.S. at 608. *Specht,* furthermore, distinguished *Williams v. New York,* 337 U.S. 241 (1949), in which no violation of due process was found when a trial judge's determination to impose the death sentence in the face of a jury's recommendation of life imprisonment was based in part upon information contained in a presentence investigation report. In *Williams* the trial judge could have sentenced the defendant to death in his un-

---

14. Our Court of Appeals has consistently held that before sentencing one otherwise entitled to be sentenced as a committed youthful offender under G.S. 148-49.4 under any other sentencing provision, the trial judge must first find that the defendant would derive no benefit from being sentenced as a youthful offender. *State v. Matre,* 32 N.C. App. 309, 231 S.E. 2d 688 (1977); *State v. Worthington,* 27 N.C. App. 167, 218 S.E. 2d 233 (1975). *See also* the statutory requirements for the imposition of the death penalty, G.S. 15A-2000.

15. The Colorado Sex Offenders Act under which a defendant convicted of a specified sex offense who was thereafter found by the trial judge to be, among other things, "an habitual offender and mentally ill," could be given a more severe sentence than that specified by the sex offense itself. 386 U.S. at 607.

bridled discretion without conducting a separate hearing or making findings whereas in *Specht* the statutory scheme required a separate proceeding and new findings of fact that were not ingredients of the offense charged. While the continued validity of *Williams* in death cases has been seriously questioned in the plurality opinion in *Gardner v. Florida, supra,* suffice it to say that under our kidnapping statute these kinds of evidentiary — due process questions are unlikely to arise. Whether the victim was released unharmed and in a safe place are facts which by their nature lend themselves to proof in open court by sworn testimony.[16] They are not the kind of "background information" normally found in presentence reports or psychiatric examinations.

Our discussion of the procedure to which a defendant is due at a sentencing hearing would be wanting if we did not recall the dictates of *State v. Pope*, 257 N.C. 326, 126 S.E. 2d 126 (1962), where, in a thoroughly researched and considered opinion on the subject, Justice Clifton Moore, writing for the Court, said, *id.* at 334, 126 S.E. 2d at 132-33:

> "Sentencing is not an exact science, but there are some well established principles which apply to sentencing procedure. The accused has the undeniable right to be personally present when sentence is imposed. Oral testimony, as such, relating to punishment is not to be heard in his absence. He shall be given full opportunity to rebut defamatory and condemnatory matters urged against him, and to give his version of the offense charged, and to introduce any relevant facts in mitigation."

After approving the use by the sentencing judge of presentence investigation reports Justice Moore wrote, further, *id.* at 335, 126 S.E. 2d at 133:

> "Unsolicited whispered representations and rank hearsay are to be disregarded. It is better practice to *receive* all reports and representations from probation officers in open court. All information coming to the notice of the court which tends to defame and condemn the defendant and to aggravate punishment should be brought to his attention before sentencing,

---

16. In most cases this evidence will likely be adduced during the trial of the kidnapping charge itself.

and he should be given full opportunity to refute or explain it." (Emphasis original.)

[10]    Since the factors to be found here relate solely to the severity of the sentence and not to any element of the offense itself, defendant is not entitled to a jury determination under either the federal or state constitution. In part, we base this conclusion on the fact that matters having to do with severity of sentence within the range authorized by statute for a given offense have been traditionally determined by judges. *See Williams v. New York, supra; State v. Pope, supra*. When, however, a statute, such as the kidnapping statute under consideration, establishes two ranges of sentences and makes their imposition dependent on the presence or absence of additional facts the question of defendant's entitlement to a jury determination of these facts is more difficult. Our conclusion that there is no such entitlement here is bolstered by the proposition that the factors are mitigating rather than enhancing. By statute in North Carolina factors which enhance the punishment are generally made elements of an offense and must be alleged and proved to a jury. General Statute 15A-928, for example, requires this procedure "[w]hen the fact that the defendant has been previously convicted of an offense raises an offense of lower grade to one of higher grade and thereby becomes an element of the latter. . . ." The same requirements prevail under our Habitual Felon Act, G.S. 14-7.1, *et seq. State v. Allen*, 292 N.C. 431, 233 S.E. 2d 585 (1977).

Most courts have, however, sustained against constitutional attack statutory procedures for sentence enhancement even when the enhancing factors are determined by the judge sitting without a jury following conviction of the primary offense. For example, the Federal Dangerous Special Offender Act, 18 U.S.C. § 3575, provides for an increased sentence if a convicted felon is later found by the judge to be a dangerous special offender, the definitions of which are set out in the Act. This procedure has been upheld by a majority of federal circuit courts against the contention, among others, that defendant is entitled to a jury trial on the question whether he is a dangerous special offender. *United States v. Williamson*, 567 F. 2d 610 (4th Cir. 1977); *United States v. Bowdach*, 561 F. 2d 1160 (5th Cir. 1977); *United States v. Stewart*, 531 F. 2d 326 (6th Cir.), *cert. denied*, 426 U.S. 922 (1976); *but cf. United States v. Neary*, 552 F. 2d 1184 (7th Cir.), *cert.*

*denied*, 434 U.S. 864 (1977) (raising but not resolving constitutional questions). A majority of state courts have, likewise, upheld similar recidivist type statutes under which the trial judge determines whether a convicted felon is indeed a recidivist for purposes of enhancing the penalty under these statutes. *See, e.g., Howard v. State*, 83 Nev. 53, 422 P. 2d 548 (1967); *State v. Hoffman*, 236 Or. 98, 385 P. 2d 741 (1963), and cases cited therein; *State v. Guidry*, 169 La. 215, 124 So. 832 (1929). *See also*, Note, The Constitutionality of Statutes Permitting Increased Sentences for Habitual or Dangerous Criminals, 89 Harv. L. Rev. 356 (1975); Note, Recidivist Procedures, 40 N.Y.U. L. Rev. 332 (1965). *A fortiori* factors which are mitigating in nature may constitutionally be determined by the sentencing judge.

Article I, § 24 of the North Carolina Constitution guarantees the right of a jury trial to criminal defendants.[17] This section has been interpreted to mean that a criminal defendant is "entitled as of right to a jury trial as to *every* essential element of the crime charged. . . ." *State v. Lewis*, 274 N.C. 438, 442, 164 S.E. 2d 177, 180 (1968). (Emphasis original.) Since we have concluded that the mitigating factors in question are not elements of any substantive criminal offense but bear solely on the question of punishment, having the judge determine these matters is not violative of Article I, § 24.

**[11]**  Neither do we find any constitutional infirmity in placing the burden of persuasion as to the mitigating factors on the defendant. The controlling authorities are *Patterson v. New York*, 432 U.S. 197 (1977); *Mullaney v. Wilbur*, 421 U.S. 684 (1975); *In re Winship*, 397 U.S. 358 (1970); *State v. Hankerson*, 288 N.C. 632, 220 S.E. 2d 575 (1975), *rev'd on other grounds sub nom, Hankerson v. North Carolina*, 432 U.S. 233 (1977). *Winship* held that the New York Family Court Act, which provided that determinations at juvenile hearings could be made on a preponderance of the evidence, was violative of constitutional due process saying, "[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship, supra*, 397 U.S. at 364. Relying on *Win-*

---

17. "Sec. 24. *Right of jury trial in criminal cases.* No person shall be convicted of any crime but by the unanimous verdict of a jury in open court. The General Assembly may, however, provide for other means of trial for misdemeanors, with the right of appeal for trial de novo."

State v. Williams

*ship* the Supreme Court in *Mullaney* struck down Maine's common law of homicide as being violative of due process insofar as that law required a homicide defendant to prove by a preponderance of the evidence that he killed in the heat of passion on sudden provocation in order to reduce the homicide from murder to manslaughter. In *Patterson* a majority of the Court concluded there was no constitutional infirmity in New York's statutory law of homicide which permitted a defendant accused of murder to raise an affirmative defense that he "acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse." New York Penal Law § 125.25 (1)(a) (McKinney 1975). Under New York law the defendant had the burden to prove this affirmative defense by a preponderance of the evidence to reduce murder to manslaughter. The *Patterson* majority distinguished *Mullaney* on the ground that Maine's homicide law made a killilng in the heat of passion on sudden provocation the antithesis of malice, an essential element of the crime of murder. Therefore Maine could not, consistent with due process, relieve the state of the burden of proving malice beyond a reasonable doubt by placing upon the defendant the burden of proving that he acted with heat of passion upon sudden provocation, *i.e.*, without malice. In New York, reasoned the *Patterson* majority, malice was not an element of murder. The New York Penal Law, § 125.25, provided:

> "A person is guilty of murder in the second degree when:

> "1. With intent to cause the death of another person, he causes the death of such person or of a third person. . . ."

Thus in New York murder in the second degree was defined by statute to be simply causing the death of another person with intent to cause that death. The affirmative defense of acting under the influence of extreme emotional disturbance was not the antithesis of any element of the crime. Proof of it did not negate any affirmative element of the crime upon which the state must bear the burden of persuasion. The defense was more in the nature of a plea, not in negation, but in avoidance. The majority in *Patterson* said on this point, 432 U.S. at 214 n. 15:

> "There is some language in Mullaney that has been understood as perhaps construing the Due Process Clause to

require the prosecution to prove beyond a reasonable doubt any fact affecting 'the degree of criminal culpability.' . . . It is said that such a rule would deprive legislatures of any discretion whatsoever in allocating the burden of proof, the practical effect of which might be to undermine legislative reform of our criminal justice system. . . . Carried to its logical extreme, such a reading of Mullaney might also, for example, discourage Congress from enacting pending legislation to change the felony-murder rule by permitting the accused to prove by a preponderance of the evidence the affirmative defense that the homicide committed was neither a necessary nor a reasonably foreseeable consequence of the underlying felony. See Senate bill S 1, 94th Cong, 1st Sess, 118 (1975). The Court did not intend Mullaney to have such far-reaching effect."

Although *Mullaney* itself was decided unanimously, Mr. Justice Powell, its author, dissented in *Patterson* and was joined by Mr. Justice Brennan and Mr. Justice Marshall. This dissent is also noteworthy for its construction of *Mullaney*. It makes clear that *Mullaney* did not purport to preclude shifting the burden of persuasion to a criminal defendant on all factors that mitigate punishment. Mr. Justice Powell wrote, 432 U.S. at 226-27:

"The Due Process Clause requires that the prosecutor bear the burden of persuasion beyond a reasonable doubt only if the factor at issue makes a substantial difference in punishment and stigma. The requirement of course applies a fortiori if the factor makes the difference between guilt and innocence. But a substantial difference in punishment alone is not enough. It also must be shown that in the Anglo-American legal tradition the factor in question historically has held that level of importance. If either branch of the test is not met, then the legislature retains its traditional authority over matters of proof.

. . . .

"Moreover, it is unlikely that more than a few factors — although important ones — for which a shift in the burden of persuasion seriously would be considered will come within the Mullaney holding. With some exceptions, then, the State has the authority 'to recognize a factor that mitigates

the degree of criminality or punishment' without having 'to prove its nonexistence in each case in which the fact is put in issue.' . . . New ameliorative affirmative defenses, about which the Court expresses concern, generally remain undisturbed by the holdings in Winship and Mullaney—and need not be disturbed by a sound holding reversing Patterson's conviction." (Footnotes omitted.)

In *Hankerson* this Court concluded that our law of homicide was violative of the Due Process Clause as that clause was interpreted in *Mullaney* insofar as it utilized certain presumptions of malice and unlawfulness in homicide cases so as to shift the burden of persuasion with regard to the non-existence of these elements to the defendant. We concluded that a defendant may not be given the burden of persuading the jury that he killed in the heat of passion, *i.e.*, without malice, in order to mitigate his crime to manslaughter or that he killed in self-defense, *i.e.*, not unlawfully, in order to excuse it altogether. These conclusions were reached because under our law of homicide both malice and unlawfulness were affirmative elements of the crime of murder in the second degree. *State v. Duboise*, 279 N.C. 73, 181 S.E. 2d 393 (1971). Heat of passion on sudden provocation is the antithesis of malice. The two concepts are mutually exclusive. Likewise self-defense is the antithesis of unlawfulness and these two concepts are mutually exclusive. Since *Winship* and *Mullaney* made it clear that the state must bear the burden of proof as to every essential element beyond a reasonable doubt, we concluded in *Hankerson* that the state must continue to bear this burden throughout the trial on the elements of malice and unlawfulness. This meant that in cases where evidence was adduced that the defendant killed in heat of passion the state must bear the burden of persuading the jury that defendant did not in fact kill in the heat of passion but that he killed with malice. Likewise where evidence was adduced of self-defense the state must continue to bear the burden of persuading the jury that the defendant did not in fact kill in self-defense but that he killed unlawfully.

The mitigating factors in the kidnapping statute, however, are not the antithesis of any essential element of the crime of kidnapping. Proof of these factors does not negate any element of the crime of kidnapping which the state must prove. The mitigating factors are, in reality, pleas in avoidance or mitigation

of punishment and not pleas in negation. Neither are they the kind of factors making "a substantial difference in punishment and stigma" which have been historically present in the Anglo-American legal tradition. Consequently, placing the burden of persuasion on these factors on the defendant would satisfy even the dissenters in *Patterson*. Clearly this procedure is within the rationale of the *Patterson* majority opinion.

Even before *Patterson* was decided a New York trial court in *People v. Archie*, 380 N.Y.S. 2d 555, 85 Misc. 2d 243 (1976), and the United States District Court for the Southern District of New York in *Farrell v. Czarnetsky*, 417 F. Supp. 987 (1976), had upheld the armed robbery section of the New York Penal Law, § 160.15, against the contention that an affirmative defense portion of the statute violated the holding of *Mullaney*. The statute provided in part as follows:

> "A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
>
> \*    \*    \*    \*    \*    \*
>
> 4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged."

If defendant proved the affirmative defense the crime was reduced from first to second degree robbery. Both courts concluded that it was no violation of due process under *Mullaney* to give the defendant the burden of persuasion on the affirmative defense. The court in *Farrell* said, 417 F. Supp. at 988:

> "Section 160.15 requires that the prosecution prove beyond a reasonable doubt that the defendant forcibly took property by the display of what appears to be a firearm. The fact that the firearm is loaded is not an essential element of the crime of robbery and the prosecution is not relieved of any of its burden of proof.

State v. Williams

"The affirmative defense is an ameliorative device which permits the defendant to show, after his guilt has been proved, that he was unable to complete the assault he threatened with the firearm. Due process is not offended by requiring the defendant to prove, after the prosecutor has first established the display of a firearm, that the firearm was not loaded. If he does not, the jury is entitled to presume what the criminal's victim presumes, that is, that the gun is loaded."

We think, as *Patterson* subsequently demonstrated, that both the result and the reasoning in *Farrell* were correct. The mitigating factors in our kidnapping statute are of the same nature as the ameliorative affirmative defense discussed in *Farrell*. Due process does not prohibit placing the burden of persuasion on these factors on the defendant.

[12]   We note one exception to the procedures we have set out above, and it applies to this case. When, as here, the question of the existence of mitigating factors has, in effect, been submitted to the jury in the form of separate criminal charges tried jointly with the kidnapping case, and the jury finds defendant guilty, there is no need for the judge to make separate findings. The non-existence of mitigating factors will already have been determined beyond a reasonable doubt. Since the jury made such a determination in this case, the life sentences imposed upon defendant's conviction of the kidnapping charges were proper.

### III

Defendant next contends that the sentences imposed by the trial court constituted cruel and unusual punishment and denied him equal protection of the laws in violation of the Eighth and Fourteenth Amendments to the United States Constitution. He argues that the trial judge "sentenced him to serve . . . 300 years" because five of the sentences run consecutively and each life sentence is considered to be 80 years. *See* G.S. 14-2 as amended by the 1977 Session Laws, chapter 711, section 15 (effective 1 July 1978); *compare* G.S. 15A-1351, -1354, -1355, -1371. Notwithstanding the magnitude of this punishment, we find no merit in defendant's contention.

[13, 14]   A sentence within the maximum authorized by statute is not cruel or unusual in a constitutional sense, unless the punishment provisions of the statute itself are unconstitutional. *State v.*

*Cradle*, 281 N.C. 198, 188 S.E. 2d 296 (1972); *State v. Rogers*, 275 N.C. 411, 168 S.E. 2d 345 (1969), *cert. denied*, 396 U.S. 1024 (1970). Where the objection was really to the imposition of consecutive sentences rather than to the length of any particular sentence, this Court has specifically approved consecutive sentences. *State v. Mitchell*, 283 N.C. 462, 196 S.E. 2d 736 (1973); *State v. Bruce*, 268 N.C. 174, 150 S.E. 2d 216 (1966). Here each sentence received by defendant was statutorily authorized, and nothing appears to distinguish this case from *Mitchell* and others where consecutive sentences have been upheld. We conclude that the sentences imposed did not constitute cruel and unusual punishment.

The equal protection aspect of defendant's argument is rather difficult to sort out. In essence, defendant says that it is unconstitutional for him to have received a longer sentence than others have received for similar or more serious crimes. Defendant seems at one point to suggest that he received a longer sentence because he is black and his victims are white. Beyond this mere suggestion, however, he neither pursues this argument nor points to any evidence to support it. His primary argument is that it is violative of equal protection for him to have received a longer sentence than some murderers have in similar circumstances. The short answer to this argument is that in this case no credit except that required by statute is due defendant for the fact that a murder did not occur. He shot Harrison in the head fully intending to kill him and left him for dead. Harrison lived by God's grace, not defendant's. Defendant's plea for mercy because Harrison did not die falls on deaf ears here. Furthermore there is nothing in the record to support the premise that defendant received longer sentences than others similarly convicted. His brief refers us only to *State v. Madden*, 292 N.C. 114, 232 S.E. 2d 656 (1977), where two defendants were convicted of murder in the first degree, and to the "N.C. Reports." In *Madden* both defendants received the maximum sentence available, life imprisonment. Defendant's reference to the "N.C. Reports" is so vague and indefinite as to be unavailing on this aspect of his argument. *See also State v. Benton*, 276 N.C. 641, 660, 174 S.E. 2d 793, 805 (1970).

IV

[15] Defendant's final two assignments of error which merit discussion relate to remarks made by Mr. Walker, the privately

employed prosecutor. The first of these remarks occurred as Mr. Walker objected to a portion of the jury argument by defense counsel, Mr. Blackford:

"MR. BLACKFORD: Consider everything. Where is the physical evidence? We know one other thing—that physical evidence was obtained from Mrs. Walters; that it was obtained at Presbyterian Hospital; that it was sent to the Crime Lab. That is what we know. We know that this man when he was first apprehended, blood samples was taken from him; a combing of the pubic area was taken from him, a hair sample. Where are they today? Now, the State is duty bound. It is their obligation, according to the laws of the State of North Carolina and the United States to prove this man's guilt beyond a reasonable doubt, by solid evidence.

MR. WALKER: I OBJECT TO THIS ARGUMENT. Nothing was sent to Raleigh.

MR. BLACKFORD: I didn't argue that.

MR. WALKER: You told the jury something was sent there.

MR. BLACKFORD: I didn't say anything about Raleigh.

MR. WALKER: You just got through telling them that.

COURT: The jury will take their own recollection."

Defendant contends that the private prosecutor, by stating, "Nothing was sent to Raleigh," suggested to the jury the existence of other incriminating evidence and thus precluded a fair trial. The record shows that some physical evidence had been sent to Raleigh. The results of tests on that evidence had been inconclusive; they neither pointed to defendant's guilt or his innocence. The prosecutor offered this material into evidence, apparently because he thought it was exculpatory and he thought it was his duty to do so. Defendant objected, apparently feeling that the material was not exculpatory. The trial court sustained his objection. Defendant's counsel therefore knew the answer to his question, "Where is the physical evidence?" It had been excluded because of his objection. The private prosecutor's objection to his argument was well founded. What was unfortunate was his additional inaccurate statement, "Nothing was sent to

Raleigh." What we must decide is whether this inaccurate statement, in the context of a proper objection, denied defendant a fair trial.

While a prosecuting attorney may not include in his argument facts not in evidence, arguments of counsel to the jury are largely in the control and discretion of the trial court. *State v. Taylor*, 289 N.C. 223, 221 S.E. 2d 359 (1976); *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125 (1975). Ordinarily the trial judge's exercise of discretion is not reviewed unless the impropriety of counsel's remarks is extreme and clearly calculated to prejudice the jury. *State v. Taylor, supra*; *State v. Barefoot*, 241 N.C. 650, 86 S.E. 2d 424 (1955). Nevertheless, the trial court upon objection has a duty to censor remarks not warranted by the evidence, and even in the absence of objection it is proper to correct a gross impropriety *ex mero motu. State v. Britt*, 288 N.C. 699, 220 S.E. 2d 283 (1975); *State v. Monk, supra*.

Here, though perhaps technically improper, the private prosecutor's remark plainly was not extreme, nor was it clearly calculated to prejudice the jury. *Compare State v. Thompson*, 290 N.C. 431, 226 S.E. 2d 487 (1976); *State v. Britt, supra*. Defendant did not object or request an instruction that the jury not consider it. We perceive no abuse of discretion in the failure of the trial judge to give a corrective instruction *ex mero motu*. Nor does it appear defendant was prejudiced; the jury could have inferred from the remark the non-existence of other evidence as easily as the existence of such evidence. This assignment of error is overruled.

[16] Defendant's next assignment of error relates to Mr. Walker's own closing argument for the state. The record discloses the following:

"MR. WALKER: I want to say that the defense lawyer must have had some sessions with him, because he handled himself . . . .

MR. BLACKFORD: OBJECT to that.

MR. WALKER: Well, I hope he did. I hope he talked with his client. He'd be remiss if he hadn't. I never heard of a defense lawyer . . . .

COURT: No more of the comments. Just stick with the evidence.

MR. BLACKFORD: I'd like that stricken from the record, your Honor.

COURT: Members of the jury, do not consider the comments between counsel regarding what they may or may not have done in regard to their respective clients. Do not consider that in your deliberations in this case."

The trial court's instruction to the jury was clearly sufficient, under the rules already discussed, to remedy any impropriety in the remark by the private prosecutor. Accordingly, defendant's assignment of error is overruled.

We have examined defendant's other assignments of error and find that they do not merit discussion. In the trial and the sentences imposed there was

No error.

Justice BRITT took no part in the consideration or decision of this case.