357 So.2d 1060 (1978)
Jerry WOOD, Appellant,
v.
STATE of Florida, Appellee.
No. HH-49.
District Court of Appeal of Florida, First District.
April 21, 1978.
*1061 Judith J. Dougherty, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and A.S. Johnston, Asst. Atty. Gen., for appellee.
SMITH, Judge.
Wood appeals from a judgment and sentence of the Leon County Circuit Court, entered on his plea of guilty to a charge of possession of cocaine. Section 893.13(1)(e), Florida Statutes (1977). The issue is whether the five-year sentence was lawfully made to run consecutively with a five-year sentence Wood was then serving as a result of his conviction for willfully failing to appear for proceedings in this very case, after having been admitted to bail. Section 843.15, Florida Statutes (1977). We find that the State Attorney violated his plea bargain agreement to recommend a concurrent sentence, that Wood's guilty plea was vitiated, and that the trial court was without authority to impose a consecutive sentence without first having given Wood an opportunity to withdraw his plea.
After plea discussions between Assistant Public Defender Judith Dougherty, Wood's counsel, and Assistant State Attorney James White, Wood appeared before Judge Miner on June 13, 1977, to offer a plea of guilty "with the understanding that there will be a joint recommendation by the State and Defense that the time given on this charge would run concurrently" with his sentence for willful failure to appear. Mr. White confirmed that recommendation in behalf of the state. Judge Miner accepted the plea after inquiring:
THE COURT: You understand that while the Court puts considerable weight on the recommendations of counsel, there is nothing in the law that requires it to follow those recommendations. Do you understand that?
MR. WOOD: Yes, sir.
THE COURT: It is totally a matter for the prerogative of the Court.
MR. WOOD: I understand.
THE COURT: And with that understanding, this is what you wish to do?
MR. WOOD: Yes, sir.
The court then ordered a presentence investigation and directed Mr. Mercer, a parole and probation officer who was present, to provide a report within three weeks.
*1062 On June 29, parole and probation officer Fred Ingley completed a two-part report of his presentence investigation. His six-page report of "factual material" was disclosed by the court to Wood and his counsel; his five-page "confidential evaluation" was not. Fla.R.Crim.P. 3.713(a), (b).[1] Mr. Ingley's factual report included the following representations concerning recommendations by court and law enforcement officers:
Judy Dougherty [Wood's counsel] stated that there was a co-recommendation between the prosecution and the defense that the subject receive a concurrent sentence to the Failure to Appear case in which he was recently sentenced in the Leon circuit court.
As of the date of dictating this PSI, 6-24-77, this writer has been unable to contact Assistant State's Attorney Jim White reference his recommendations on this instant offense.
Mr. Ingley's recitation of factual material concluded with his certificate that
The above is true and correct to the best of my knowledge and belief.
On July 11, Wood appeared again before Judge Miner for sentencing in the presence of Assistant Public Defender Dougherty and Assistant State Attorney White. Lawyer Dougherty stated:
Your Honor, I hope that under the circumstances the Court feels that it can go along with the recommendation by the state and defense that this sentence . . run concurrently to the failure to appear sentence, which was for the same offense as he's now before the Court on.
THE COURT: Is there a recommendation to that effect, Mr. White?
MR. WHITE: The State said it would not oppose her recommendation for concurrent time [for] the failure to appear and possession of cocaine. We would not speak in opposition to that.
THE COURT: Do I hear an affirmative recommendation from the State of Florida that there be ____, Was there any kind of affirmative recommendation?
MR. WHITE: No, sir. We just agreed to remain silent as to that aspect.
THE COURT: Well, I do not agree.
.....
MRS. DOUGHERTY: I had a note of this. Well, that's all right, your Honor. We will go along with what the State says. We're recommending a concurrent sentence and they do not oppose it.
Wood attempted to explain to Judge Miner some of the offenses described in the factual section of Mr. Ingley's presentence report. The court then adjudicated Wood guilty of possession of cocaine and sentenced him to a five-year term to run consecutively with the term he was then serving.
Lawyer Dougherty filed, on August 10, a notice of appeal in Wood's behalf, and only then sought an order for transcripts of the plea and sentence proceedings, which were filed in September. Briefs were submitted in this court on the question of whether the consecutive sentence was vitiated by Assistant State Attorney White's failure or refusal, at the sentencing on July 11, to verify his prior recommendation of a concurrent sentence. The state here argued, among other things, that Assistant Public Defender Dougherty acquiesced at sentencing in the state's change of position.
In the meantime, with the transcripts in hand, lawyer Dougherty went to Judge Miner. He revealed to her, for the first time, the "confidential evaluation" section of Mr. Ingley's presentence report, which thereafter was made a part of this record. There Mr. Ingley had reported, over a similar *1063 certificate, that it was "true and correct to the best of my knowledge and belief," that:
In addition to the prosecuting attorney Jim White, another State Attorney, Tony Bajoczky, indicated that he felt this was probably one of the worst individuals he has ever dealt with and hoped the Court would see fit to incarcerate him for as long as is possible for this and any other offense for which the subject might have been or be found guilty.
We can only hope that Mr. Ingley's confidential report was in error in reciting that Assistant State Attorney James White joined Assistant State Attorney Tony Bajoczky's recommendation that Wood be incarcerated "for as long as is possible." Conceivably Mr. Ingley gained an erroneous impression of lawyer White's views through his colleague Mr. Bajoczky, or through other hearsay. But, even assuming that to be true, and reading this incomplete evidence in a light most favorable to the prosecuting authorities and Mr. Ingley, it appears beyond question that Wood's plea of guilty on June 13 was induced by Assistant State Attorney White's recommendation of a concurrent sentence; that lawyer White reneged on his recommendation at the sentencing hearing and refused to do more than stand silent in the face of a direct inquiry concerning his recommendation; that Assistant State Attorney Bajoczky, who knew or should have known of the plea bargain, strongly recommended to Mr. Ingley that Judge Miner be urged to incarcerate Wood for as long as possible; that Mr. Ingley knew or should have known from his colleague Mr. Mercer that Assistant State Attorney White had recommended a concurrent sentence on June 13; that Mr. Ingley nevertheless represented in his factual report that he had been unable to reach Assistant State Attorney White to confirm the joint recommendation for a concurrent sentence, of which lawyer Dougherty advised him; that Mr. Ingley's factual report, which he knew would be furnished Wood's counsel in compliance with Rule 3.713, was therefore calculated to lead the defense to believe that the state's prior recommendation was not withdrawn but was merely unconfirmed by Mr. Ingley; and that Mr. Ingley, knowing that his confidential evaluation would not be furnished to Wood and his counsel, simultaneously conveyed to the court through that device a damning recommendation by Assistant State Attorneys White and Bajoczky that Wood be imprisoned for as long as possible, that is to say, consecutively.
We recognize that Assistant State Attorney White, Assistant State Attorney Bajoczky, Parole and Probation Officers Ingley and Mercer have not had an opportunity to explain their individual roles in this debacle, to challenge the implications of our recital, and to confront and cross-examine each other as sworn witnesses. Yet the picture arising from this record is that the state, through these public officials, deceitfully took an affirmative and conciliatory position to induce Wood's plea of guilty, an inconsistent but ostensibly neutral position when the plea was in hand, and a hostile position through a covert communication to the court. The judgment and sentence will of course be vacated. Crossin v. State, 262 So.2d 250 (Fla.4th DCA 1972).
In these circumstances we need not pause to inquire whether lawyer Dougherty's momentary lapse, in acquiescing in lawyer White's conduct at sentencing without consulting her client, would in other circumstances have validated the result. Neither do we inquire what Judge Miner's duty was when, with Mr. Ingley's confidential report in hand, he heard Mr. White announce at sentencing that the state had no recommendation. It is evident that Judge Miner was troubled by the announcement ("Well, I do not agree"); he apparently broke off further inquiry because lawyer Dougherty acquiesced in Mr. White's retreat from his prior recommendation; and it may well be that, considering Wood's apparent contempt for law and society, Judge Miner would have determined to impose a consecutive sentence regardless of recommendations by the state. But Wood's apparent contempt for the law and its servants does not excuse our deserving it. We can only rejoice that *1064 lawyerly persistence by Ms. Dougherty and fair judgment by Judge Miner ultimately prevailed, resulting in the revelation to us of Mr. Ingley's report.
It is apparent that the truth in this case, or so much of the truth as we know, surfaced only through an extraordinary conversation between defense counsel and the trial judge, after he had lost jurisdiction and this case was well on its way toward decision in this court. That is too problematic a shield against the repetition of this kind of conduct by the state; and, to provide more appropriate protection of the accused who has been induced to plead guilty by a prosecutor's utterance of a certain recommendation, we are obliged to address again the very slippery problems attending such plea bargains.
In Adams v. State, 328 So.2d 48 (Fla.1st DCA 1976), we vacated a twenty-year sentence imposed after a plea of guilty was induced by the prosecutor's recommendation of at most a ten-year sentence. Because the trial court did not give the accused an opportunity to withdraw the guilty plea when the judge determined not to abide by the inducing recommendation, we held that the trial court did not comply with the standard we perceived in former Rule 3.171(c), Fla.R.Crim.P., providing:
After an agreement on a plea has been reached, the trial judge may, with the consent of the parties, have made known to him the agreement and reasons therefor prior to the acceptance of the plea. The terms of the agreement shall be placed in the record. He shall thereafter advise the parties of whether other factors (unknown at the time) may make his concurrence impossible. Should such other factors make ultimate judicial concurrence impossible, any plea of guilty or nolo contendere entered based upon such agreement may thereafter be withdrawn.
The same rule provisions are now distributed in Rules 3.171(d) and 3.172(g).
We held in Adams that, however emphatically the sentencing judge might advise the accused on plea day that the court is not bound to sentence in accord with the prosecutor's recommendation, the court remains under a duty to grant the accused an opportunity to withdraw the plea should ultimate judicial concurrence with the recommended sentence be impossible. We considered that the applicability of Rule 3.171, and the trial court's duty to allow a bargained plea to be withdrawn if the recommended sentence is unsatisfactory, should not be made to depend on the fine distinction, not expressed in Rule 3.171, between a bargain for the prosecutor's recommendation of a certain sentence and a bargain for a certain sentence in accord with the prosecutor's recommendation. We thought the distinction rendered bargains too far subject to misunderstanding in private dealings between counsel, on plea day, at sentencing, and in the appellate court, to be permitted such power over the fate of the accused. We felt that any confusion is masked, not clarified, by the trial judge's conventional response that the court is not bound by the bargain struck, which is true in either case.
A unanimous Supreme Court reversed our decision in State v. Adams, 342 So.2d 818 (Fla. 1977). The Court held that there is a difference between a plea bargain for the prosecutor's recommendation of a certain sentence and a plea bargain for a sentence in accordance with the prosecutor's recommendation. The Court held that, in the former instance, the agreement inducing the plea is completely fulfilled when the prosecutor makes his recommendation as agreed; and that the sentencing judge, having suitably cautioned the accused that the court is not bound by the recommendation, may accept the plea and thereafter sentence the accused more severely than recommended, without granting him an opportunity to withdraw the plea induced by the bargain.
This case is but a particularly shocking illustration of the jeopardy the accused may unwittingly encounter in an Adams-type bargain for a prosecutor's recommendation of a certain sentence, as distinguished from a rule-type bargain for a certain sentence in accord with the prosecutor's recommendation. As we suggested in Adams, 328 So.2d *1065 at 48, and as the Supreme Court's action in that case confirmed, the criminal rules are finessed by a bargain perceived as gaining only the prosecutor's recommendation, irrespective of whether the sentencing judge expresses an intention, as did Judge Miner, of placing "considerable weight" on the recommendation. Since Adams, we have cautioned counsel who wish to preserve the rule's benefits to bargain for "agreement by the trial court that if it determines that it will not make the recommended disposition, it will then allow the defendant to withdraw his plea." Peterson v. State, 350 So.2d 565, 567 (Fla.1st DCA 1977).
In deference to a superior ruling, we can no longer be concerned with the innate slipperiness of words expressing plea bargains, and with the consequences to the accused of a bargain expressed and understood without precision. We are here concerned with another, graver, aspect of the Adams distinction between a bargain for a prosecutor's recommendation and a bargain for a sentence. In the latter case, the bargain is memorialized on a cold record and Rules 3.171(d) and 3.172(g) protect the accused from its violation. But when the bargain is perceived as for a prosecutor's recommendation only, the accused's only legitimate expectation from the bargain is that the prosecutor's recommendation will in some measure be persuasive. That factor, problematic enough by nature, subjects the bargain to corroding influences that cannot be recorded in a transcript, and which may have their effect at any time between plea and sentence, and under informal or otherwise uncontrolled circumstances. A prosecutor with the best of intentions may seem enthusiastic when discussing a recommendation in private conference with defense counsel, but less so when fulfilling the bargain on plea day before the sentencing judge. The prosecutor's manner of presenting the recommendation may speak to the sentencing judge more eloquently than his words. And, as we see so clearly in this case, the prosecutor's memory of his recommendation may lapse before sentencing. Even when his memory of the recommendation doesn't fade, his approval of it may.
Even in the regular presentence processes of the court, opportunities are abundant for the state, whose prosecuting agent has made a favorable recommendation to induce a guilty plea, to withdraw that recommendation or to blunt its persuasiveness by means overt and covert. The prosecutor who made the recommendation may remain faultlessly true, but his colleague in the same office may convey to the parole and probation officer, as in this case, an earnest recommendation for maximum incarceration. Or the state attorney's more punitive recommendation may be conveyed to the parole or probation officer, innocently or not, by investigators or police officers who were not privy to the bargain which induced the plea. We need not consider in this case, and we do not consider, whether an independent recommendation of another state law enforcement officer for more punitive action should be held to vitiate an assistant state attorney's recommendation and his tacit agreement not to undermine any persuasiveness his recommendation in court may have had.
Given the Adams exemption of this type of bargain from the protective effects of Rules 3.171(d) and 3.172(g), we cannot prescribe protection against the relatively more ineffable influences which the state's agents may thoughtlessly bring to bear against the prosecutor's recommendation. But we can and must offer protection against such influences of a more direct and tangible nature. When the sentencing court has received and approved a plea of guilty entered upon an Adams-type bargain for a prosecutor's recommendation of a certain or maximum sentence, the State Attorney and his assistants should thereafter make no utterance tending to compromise whatever persuasive effect the in-court recommendation may have had. Representatives of that office shall, when requested by the court or its officers charged with the presentence investigation, repeat that recommendation with like effect as when it was originally made on plea day. All written communications by state agents *1066 to the court on the subject of sentencing shall be exhibited to defense counsel before sentencing, so that he or she may assure that no deliberate or inadvertent prosecutorial undermining of the recommendation has occurred. Inasmuch as conversations between the parole and probation officer and the prosecuting state attorney are natural and desirable in any presentence investigation, and those conversations may surface in the confidential evaluation portion of the presentence report, the report in its entirety, including the confidential portion, shall on request be furnished to defense counsel. That access is necessary to assure that the report neither repeats nor reflects the influence of prosecutorial recommendations contrary to those stated in open court.
The trial court has discretion under Rule 3.713 to disclose the otherwise confidential evaluation of a presentence report. That discretion must be exercised to permit its revelation to defense counsel when the accused is held to have pleaded guilty in reliance on so vaporous a benefit as the prosecutor's recommendation of a certain disposition.
In the alternative, of course, the sentencing judge may reject a guilty plea tendered pursuant to an Adams-type bargain; or the court may consider the bargained plea as having been tendered in reliance on a particular disposition and on the protective benefits of Rules 3.171(d) and 3.172(g). So announcing when the plea is entered, the court will sentence the accused in accord with the recommendation or, finding concurrence impossible, permit the accused to withdraw his plea. In that event, the plea bargain is not subject to abuse, and there is no need for the court's revelation of the confidential section of the presentence investigation report, or of other communications which in the court's discretion may be considered confidential.
To facilitate the Supreme Court's review of this decision, we certify that it passes on a question of great public interest. Article V, Section 3(b), Florida Constitution.
REVERSED.
McCORD, C.J., and MELVIN, J., concur.
NOTES
[1] The trial judge may disclose any of the contents of the presentence investigation to the parties prior to sentencing. Any information so disclosed to one party shall be disclosed to the opposing party.
"(b) The trial judge shall disclose all factual material, including but not limited to the defendant's education, prior occupation, prior arrests, prior convictions, military service and the like, to the defendant and the State a reasonable time prior to sentencing. If any physical or mental evaluations of the defendant have been made and are to be considered for the purposes of sentencing or release, such reports shall be disclosed to counsel for both parties."