376 So.2d 47 (1979)
Ulysses ADAMS, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. FF-349.
District Court of Appeal of Florida, First District.
October 25, 1979.
*49 Michael A. Minerva, Public Defender and Margaret Good, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Patti L. Englander, Asst. Atty. Gen., Tallahassee, for appellee.
ROBERT P. SMITH, Judge.
Adams appeals from a sentence imposed on him as an habitual felony offender whose extended imprisonment[1] the trial court found "necessary for the protection of the public from further criminal activity by the defendant." Section 775.084, Florida Statutes (1977). At sentencing it was conventionally proved, by documentary evidence and testimony, that the two felonies for which Adams was to be sentenced were committed within five years of his release from a prison sentence imposed for a prior armed robbery. Adams thus qualified as an "habitual felony offender,"[2] *50 the threshold inquiry in Section 775.084 proceedings. The issues before us are (1) the extent to which the trial court's second-stage determination, that an extended sentence is "necessary for the protection of the public from further criminal activity" by the defendant, may be influenced by the probation officer's presentence investigation report, as distinguished from evidence conventionally adduced in court, and particularly by hearsay statements in the report which attribute violent crimes, unproven and unprosecuted, to Adams; and (2) the sufficiency of the court's stated findings that an extended five-year sentence is necessary to protect the public from further criminal activity by Adams.
We hold there are no constitutional or statutory objections to the sentencing court relying on presentence investigation reports[3] in Section 775.084 proceedings, as in ordinary sentencing, but that Section 775.084, construed in the light of due process requirements, requires that hearsay recitations in the report of unproved criminal activity must be corroborated, if contested, by witnesses subject to confrontation and cross-examination by the defendant.
Adams was charged in two third degree felony counts with possession of heroin and possession of narcotics paraphernalia: a syringe, cooker, and foil. Before the trial date, the state attorney served notice that he intended to seek an extended sentence of up to ten years. Section 775.084(3)(b); see also fn. 1, supra. On the day of trial, Adams withdrew his not guilty plea and pleaded guilty understanding that the court would delay sentencing pending consideration of a presentence investigation report. A copy of the presentence report, including the confidential section, was timely given to Adams' counsel  or, at least, Adams does not contend otherwise. At the sentencing hearing, the State readily proved that Adams is an habitual felony offender. To establish that an extended sentence "is necessary for the protection of the public from further criminal activity by the defendant" the state relied entirely on the presentence investigation report prepared by a probation and parole officer who was present at the hearing. The report states, among other things, that Adams had used a sawed-off shotgun in committing the prior armed robbery[4] and that Adams was an admitted heroin addict who dropped out of a rehabilitation program and chose to "lead the lifestyle of a drug addict." Adams' mother was quoted as saying Adams was emotionally unstable and in need of psychiatric help. A police detective was quoted as saying that he had no doubt of Adams' involvement in two attempted murders, and that Adams should be "kept off the streets."[5]
*51 Adams' counsel conceded that the court could properly consider statements in the presentence report by a parole and probation officer having personal knowledge of Adams' heroin addiction, including Adams' recorded admission concerning that, but counsel objected to the court's consideration of hearsay in the report, especially its recorded statements by others concerning Adams' implication in two attempted murders. In finding a necessity for Adams' sentencing under Section 775.084, the court avoided explicit reliance on the report's attribution of attempted murder to Adams, saying
[T]he Court is going to find that sufficient information has been submitted to the Court to show that the protection of the public is warranted. I'm going to give you the basis of that in the event you want to seek further determination. I note that the prior conviction involved a violent crime, an armed robbery of a business place, and that he was subsequently released on parole, violated that parole after being offered an opportunity to participate in drugs [sic]; that he was arrested and charged with another violent crime, assault to murder by the police officers. He was not formally charged by Information. Although he has entered a plea of guilty to the possession of heroin and the paraphernalia, which, as I see, is the one positive aspect with respect to that he claims that this was a frame even though he has admitted his guilt. The Court does feel that all those factors considered together, in addition to his prior record, that the protection of the public requires that enhanced penalty be considered... . (Emphasis supplied.)
The court sentenced Adams to concurrent ten year terms: five years for each third degree felony possession of narcotics and possession of narcotics paraphernalia, and five more years on each count under the habitual felony offender statute.[6]
In Section 775.084 proceedings for an extended sentence, the issue over the use of hearsay in presentence investigation reports is framed by subsections (3)(a) and (c) of that statute:
(3) ... The procedure shall be as follows:
(a) The court shall obtain and consider a presentence investigation prior to the imposition of a sentence as an habitual felony offender or an habitual misdemeanant.
.....
(c) Except as provided in paragraph (a), all evidence presented shall be presented in open court with full rights of confrontation, cross-examination, and representation by counsel.
Subsection 3(d) further provides:
(d) Each of the findings required as the basis for such sentence shall be found to exist by a preponderance of the evidence and shall be appealable to the extent normally applicable to similar findings.
What Section 775.084 does not say is whether one's "full rights of confrontation, cross-examination, and representation by counsel" are satisfied when the State produces no witness to testify concerning the defendant's criminal propensities, but relies instead on ex parte statements of potential witnesses as recorded in the presentence investigation report, most tellingly in the "confidential" section.[7]
Subsections 3(a) and (c) must be reconciled in light of the distinction between the limited due process rights afforded the defendant *52 during ordinary sentencing, Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), and the greater measure of protection afforded him in extended sentence proceedings when, as here, an added sentence depends on a "new finding of fact ... that was not an ingredient of the offense charged." Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). In Williams, the Supreme Court refused rights of confrontation and cross-examination to defendants being sentenced within statutory limits for their offenses, holding that to do so would lessen the value of independent reports to the court by probation officers.[8] In Specht, the Supreme Court held that undisclosed hearsay evidence in a presentence psychiatric report could not constitutionally be relied on by a court sentencing under the Colorado Sex Offenders Act, which the Court said made "one conviction the basis for commencing another proceeding under another Act to determine whether a person constitutes a threat of bodily harm to the public, or is an habitual offender and mentally ill." 386 U.S. at 608, 87 S.Ct. at 1211, 18 L.Ed.2d at 329 (1967). The Court held that when the extended sentence depends on a new finding of fact, not an ingredient of the offense for which defendant is to be sentenced, due process requires that the defendant "be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own." Specht, 386 U.S. at 610, 87 S.Ct. at 1212, 18 L.Ed.2d at 330.
On its face, Specht apparently invalidates any extended sentencing statute under which contested hearsay in the presentence report may be relied on to support a "new charge" to the effect that the defendant is an habitual offender whose further imprisonment is necessary to protect the public against his further criminal activity. Section 775.084, Florida Statutes, is in this respect not substantially different from Colorado's statute, struck down by Specht.[9] Yet neither is it materially different from a federal statute, 18 U.S.C., Section 3575, which the courts of appeals have sustained against similar due process challenges. Under the federal Dangerous Special Offender statute, the first-stage question is whether defendant was in fact a "special offender," which is defined comparably to Florida's "habitual offender" classifications. Fn. 2, supra. The federal second-stage inquiry, stated in Section 3575(f), is whether the defendant is "dangerous" in that "a period of confinement longer than that provided for such felony is required for the protection of the public from further criminal conduct by the defendant."
Concerning the second-stage inquiry into the defendant's dangerousness under subsection (f), the federal courts of appeals hold that the due process clause does not preclude reliance on hearsay in presentence investigation reports. E.g., United States v. Neary, 552 F.2d 1184, 1192-93 (7th Cir.1977), cert. den., 434 U.S. 864, 98 S.Ct. 197, 54 L.Ed.2d 139 (1977), holding that the critical *53 finding of dangerousness "involves both evaluation of the character of the defendant and a prediction of future conduct, matters which are traditionally left to wide discretion of a sentencing court." "Therefore," the Court held in United States v. Williamson, 567 F.2d 610, 615 (4th Cir.1977),
the sentencing court may, in its broad sentencing discretion, consider all information which has a bearing upon proof of the defendant's dangerousness. The formal rules of evidence used in criminal trials do not limit the sources of information which a court may consider in determining what is a proper sentence for a dangerous special offender.
See also United States v. Stewart, 531 F.2d 326 (6th Cir.1976), cert. den., 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 376 (1976); United States v. Bowdach, 561 F.2d 1160 (5th Cir.1977); United States v. Warme, 572 F.2d 57 (2d Cir.1978), cert. den., 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 393. State courts have also sustained their own extended sentence statutes against Specht-based attacks. E.g., State v. Huelsman, 588 P.2d 394 (Hawaii 1978);[10]State v. Williams, 295 N.C. 655, 249 S.E.2d 709 (1978); State v. Wells, 265 N.W.2d 239 (N.D. 1978); Nukapigak v. State, 576 P.2d 982 (Alaska 1978).
Reconciling Specht with the use of hearsay-ladened presentence investigation reports in extended term sentencing and, for that matter, in ordinary sentencing, is a judicial feat which appears not to have been entirely accomplished.[11] The most persuasive justification for continued reliance on presentence investigation reports in extended sentence proceedings, despite due process objections sustained in Specht, is found in procedural safeguards in both the Florida and federal statutes which were entirely absent from the Colorado statute condemned by Specht. In discussing due process requirements, Specht spoke not of jury trial and proof beyond a reasonable doubt,[12] but rather of assistance of counsel, confrontation of witnesses, cross-examination, and the opportunity to offer evidence. The federal courts of appeals have found that those due process rights are satisfactorily protected by rigorous judicial attention to those procedural safeguards in Section 3575. Thus the Fifth Circuit avoided defining "what procedural protections are the minimal amount necessary to satisfy due process," and said only that Section 3575(b) protections "are adequate." Bowdach, 561 F.2d at 1174. The federal procedures are:
§ 3575. Increased sentence for dangerous special offenders.
.....
(b) Upon any plea of guilty or nolo contendere or verdict or finding of guilty of the defendant of such felony, a hearing shall be held, before sentence is imposed, by the court sitting without a jury. The court shall fix a time for the hearing, and notice thereof shall be given to the defendant and the United States at least ten days prior thereto. The court shall permit the United States and counsel for the defendant, or the defendant if he is not represented by counsel, to inspect the presentence report sufficiently prior to *54 the hearing as to afford a reasonable opportunity for verification. In extraordinary cases, the court may withhold material not relevant to a proper sentence, diagnostic opinion which might seriously disrupt a program of rehabilitation, any source of information obtained on a promise of confidentiality, and material previously disclosed in open court. A court withholding all or part of a presentence report shall inform the parties of its action and place in the record the reasons therefor. The court may require parties inspecting all or part of a presentence report to give notice of any part thereof intended to be controverted. In connection with the hearing the defendant and the United States shall be entitled to assistance of counsel, compulsory process, and cross-examination of such witnesses as appear at the hearing. A duly authenticated copy of a former judgment or commitment shall be prima facie evidence of such former judgment or commitment. If it appears by a preponderance of the information, including information submitted during the trial of such felony and the sentencing hearing and so much of the presentence report as the court relies upon, that the defendant is a dangerous special offender, the court shall sentence the defendant to imprisonment for an appropriate term not to exceed twenty-five years and not disproportionate in severity to the maximum term otherwise authorized by law for such felony. Otherwise it shall sentence the defendant in accordance with the law prescribing penalties for such felony. The court shall place in the record its findings, including an identification of the information relied upon in making such findings, and its reasons for the sentence imposed.
The defendant's procedural safeguards in Section 3575(b) are substantially the same as those in above-quoted Section 775.084(3)(a), (c), and (d), Florida Statutes (1977).[13] Thus the Florida statute facially satisfies due process requirements for the same reasons the federal statute does.
The task of reconciling Williams and Specht does not end with a finding that Section 775.084, like 18 U.S.C. Section 3575, is facially constitutional. We must yet construe the potentially conflicting Sections 775.084(3)(a) and (3)(c) to preserve legitimate court access to presentence investigation reports while fully according the defendant his statutory and constitutional rights of confrontation and cross-examination.
The question may be put this way: If in ordinary sentencing processes the court may receive hearsay presentence reports which, though significantly insulated from adversarial verification, are considered in the court's choice between (or combining) probation and imprisonment for a statutory term of from one to several and often numerous years, as well as in selecting concurrent or consecutive sentences on multiple counts, what additional confrontation rights does Section 775.084(3)(c) afford when the court may additionally impose heavier penalties on the ground that the defendant's extended imprisonment is "necessary for the protection of the public from further criminal activity"? As the sentencing judge noted in this case,[14] there is a certain futility in debating the procedures required in Section 775.084 sentencing when, without *55 regard for that statute, imprisonment can similarly be extended through consecutive sentences conventionally determined. The question of Section 775.084 safeguards against excessive hearsay is nevertheless important, for we are unwilling to assume that Adams' liberty interests are not additionally affected by the special sentence imposed on him, as compared with the possible consecutive sentences.
The demarcation between a sentencing judge's Williams-justified use of presentence reports, in both conventional and extended sentencing, and a Specht-condemned misuse of contested and uncorroborated hearsay, without confrontation and cross-examination of witnesses, is found not so clearly in the brief Specht opinion as in subsequent opinions of the courts of appeals applying 18 U.S.C., Section 3575. Specht characterized the Colorado extended sentence proceeding as "separate"[15] from that which convicted the defendant, and as involving "a new charge." In Hollis v. Smith, 571 F.2d 685, 693 (2d Cir.1978), the Court of Appeals for the Second Circuit suggested that the added and critical factor in extended sentence proceedings is not a separate stage of judicial activity, different from sentencing in conventional proceedings, but is rather the heavier statutory consequences that may flow from certain kinds of hearsay in the presentence report, as compared to hearsay information which generally displays the defendant's personality. Concerning Specht's analysis, the court stated:
A less formalistic basis of distinction would have been that where a higher sentence requires proof of a fact not established in the criminal trial, rather than the judge's overall assessment of the defendant, the sentencing is subject to certain due process guarantees with respect to proof of the critical fact.
The "fact[s] not established in [Adams'] criminal trial," required as a predicate for Section 775.084 sentencing, were (1) his prior conviction of armed robbery, his imprisonment and release less than five years before his present felony, concerning which Adams' confrontation and cross-examination rights were clear, clearly protected, and of comparatively little value, considering the limited scope of the inquiry;[16] and (2) the "fact" that Adams' extended imprisonment is necessary to protect society against his further criminal activity.
In the more critical second-stage inquiry, the "facts" concerning which the defendant enjoys the Specht safeguards of confrontation and cross-examination have become clearer in practice than they were in Specht's description. Although the Specht-triggering "fact" at the heart of the second-stage inquiry is phrased not as a fact but as a prediction, not unlike predictions made by sentencing judges every day in ordinary cases, a careful judge does not in any case predict by leaps of intuition; rather, the judge assesses a defendant's criminal propensity from what is known generally of the defendant's life and condition  his general course of behavior in the past, his family, education, vocation, medical and psychological condition, and so on  and from what is known of particular events and episodes, usually but not necessarily criminal, in which the defendant showed himself to be criminally menacing in "fact." These latter "facts", more precisely than a general assessment of the defendant's personality, inform one's prediction of future criminal conduct. Among the discrete "facts" which were hearsay-evidenced by the presentence report concerning Adams were his alleged use of a sawed-off shotgun in the prior armed robbery, and his probable guilt of two attempted murders by shooting.
*56 Once admitting the possibility in principle of distinguishing such discrete "facts" from the body of general information revealing the defendant's personality in the presentence report, one's task is simply to judiciously classify, in those terms, the hearsay so represented. Specht-sponsored rights of witness confrontation and cross-examination are to be accorded in respect to hearsaid "facts", not otherwise corroborated, which particularly show the defendant's criminal propensity, and so particularly impel a prediction that extended imprisonment is necessary to protect the public from it. The court otherwise remains free to inform itself as in ordinary sentencing through presentence report hearsay, subject to the defendant's right to produce his own witnesses, and his right of allocution.
This accommodation of Williams and Specht has been worked out in practice, if not exactly according to Specht-uttered doctrine. Without noticeably diminishing the value of any sentencing judge's traditional access to presentence reports, the Second Circuit in Fatico[17] approved a sentencing judge's requirement of testimony, subject to defendant's cross-examination, corroborating the presentence report's hearsay description of the defendant's organized crime connections:
Here, once the defendants challenged the truth of the hearsay statement, the district court correctly called for additional corroboration by the Government.
The Ninth Circuit in Weston[18] vacated an extended term sentence imposed by a court which, over defendant's objection, relied on uncorroborated presentence report hearsay that he was a large scale heroin dealer. And the Second Circuit in Needles[19] carefully noted that most of the damaging hearsay in the presentence report was corroborated by the defendant's own admissions, thus obviating the need for corroboration by witnesses subject to confrontation and cross-examination. See also United States v. Durardi, 384 F. Supp. 874, 881 (W.D.Mo. 1974), aff'd, 529 F.2d 123 (8th Cir.1975).
If the defendant disputes the truth of presentence report hearsay in respect to which he asserts rights of confrontation and cross-examination, and he wishes to exercise those rights, he must of course timely say so. Nukapigak v. State, 576 P.2d 982 (Alaska 1978); State v. Wells, 265 N.W.2d 239 (N.D. 1978); see also United States v. Warme, 572 F.2d 57 (2d Cir.1978, cert. den., 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 393 (1978). It follows that the sentencing court must devise orderly procedures for identifying hearsay in the presentence report which is disputed by the defendant, which the court intends to consider in its potential Section 775.084 findings, and which the defendant asserts, and the court finds, is subject to witness confrontation and cross-examination rights. See, e.g., 18 U.S.C. Section 3575(b).
If the defendant is effectively to exercise his right of confrontation and cross-examination of witnesses in respect to hearsaid "facts" in the presentence report otherwise uncorroborated, which particularly evidence his criminality, the defendant must know the report contains such hearsay. Not otherwise can the defendant contest the truth of the critical hearsay, call on the court to decide whether it is of such a nature as to require corroboration, and demand his rights of confrontation and cross-examination of corroborating witnesses. Even with respect to hearsay "background" facts which do not singly point to the defendant's future criminality, the defendant has the right in all sentencing proceedings, more especially in Section 775.084 proceedings, to offer "submissions and evidence ... which are relevant to the sentence." Fla.R.Crim.P. 3.720(b); see also the Committee Note to that rule. Therefore *57 the defendant and his counsel must be provided a copy of the presentence report, including any parts of the confidential section that the court may intend to rely on for any purpose under Section 775.084, sufficiently in advance of the hearing to permit adequate preparation and response to such notice requirements as the court may reasonably impose in respect to contesting hearsay.
Remembering that Specht-based confrontation and cross-examination rights in Section 775.084 proceedings do not reach hearsay repetition of ingredient facts of the offense for which the defendant is to be sentenced, the sentencing court in predicting the defendant's future criminality may freely rely on facts which the defendant admitted in previous judicial proceedings, or which were proved by witnesses who were subject to confrontation and cross-examination. Thus, in this case, if Adams judicially admitted use of a sawed-off shotgun in committing the armed robbery for which he was previously sentenced, his use of that particular weapon could now properly be considered by the sentencing court in Section 775.084 proceedings although its use was not necessarily an ingredient of Adams' prior robbery. Similarly, any ingredient fact proved or admitted in judicial proceedings leading to Adams' present conviction for possession of heroin and possession of paraphernalia may likewise be considered without requiring additional testimony at the Section 775.084 hearing. See State v. Williams, supra, 295 N.C. at 672, 249 S.E.2d at 721.[20]
We believe our holding is consonant with decisions of the other Florida district courts of appeal in construing Section 775.084: Chukes v. State, 334 So.2d 289 (Fla. 4th DCA 1976), stating the statute "requires the evidence relied upon by the trial court for the enhanced sentence be produced in open court so that the defendant has an opportunity to rebut the state's contention. See Specht v. Patterson ..."; Grimmett v. State, 357 So.2d 461 (Fla. 2d DCA 1978), following Chukes "insofar as it requires all evidence relied upon by the court to justify an enhanced sentence to be produced in open court"; McClain v. State, 356 So.2d 1256 (Fla. 2d DCA 1978), holding that defendant waived any right he had of confrontation and cross-examination by making no objection to the sentencing court's exclusive reliance on a "rap sheet"; and King v. State, 369 So.2d 1031 (Fla. 4th DCA 1979), similarly following Chukes and requiring "proof to show" a basis for the second-stage finding. But cf. Fry v. State, 359 So.2d 584 (Fla. 2d DCA 1978), briefly holding that Section 775.084(3)(c) "does not require the contents of the PSI to be proved through testimony in the traditional way," but reversing for the court's failure to "specify the evidence" justifying the extended sentence; and Grey v. State, 362 So.2d 425 (Fla. 4th DCA 1978), acknowledging that defendant's record of four prior felony convictions "presented at the sentencing by way of argument" may justify the second-stage finding under Section 775.084, but not indicating whether the defendant contested the fact of those convictions.
In Florida, as in the federal system, a court sentencing under Section 775.084 is required to make findings of fact which are based on proper sources and are susceptible to appellate review. Section 775.084(3)(d):
Each of the findings required as the basis for such sentence shall be found to exist by a preponderance of the evidence and shall be appealable to the extent normally applicable to similar findings.
This requirement was rigorously observed in Phipps v. State, 352 So.2d 102 (Fla. 1st *58 DCA 1977), Fry, Grey, and King, supra. The court's findings of fact must on their face tend to show that an extended term is necessary to protect the public from the defendant's further criminal activity. The appellate court in discharging its statutory duty cannot supplement or enhance the stated findings by reference to uncorroborated hearsay recitals, accusations, or innuendos which may be found in the presentence report. The statutory requirement for findings of fact, capable of review on appeal, is the cap of a legislative purpose which, taken as a whole, assures the defendant in Section 775.084 proceedings of confrontation and cross-examination rights which are perfectly coextensive with the sentencing court's reliance on presentence report hearsay which is subject to Specht-based contests.
Turning to the facts of this case, we see that the sentencing judge found Adams was previously convicted of armed robbery and was released less than five years before committing the felonies for which he was to be sentenced, all of which was admitted or properly proved by competent evidence, including a witness who was subject to cross-examination. Adams was thus shown to be an habitual felony offender within the meaning of Section 775.084(1)(a). The second-stage finding, that extended imprisonment is necessary to protect the public from Adams' future criminal activity, was based on stated findings, liberally construed, to the effect that Adams' prior offense, armed robbery, was dangerous irrespective of his alleged use of a sawed-off shotgun; (2) Adams violated probation by drug use after he had an opportunity to participate in a drug withdrawal program; (3) Adams possessed heroin and drug paraphernalia as charged in this case; and (4) Adams was arrested for "another violent crime, assault to murder."
The first operative fact relied on by the sentencing court was proved by court records introduced into evidence. The second was established by the presentence report prepared by probation officer Philcox, who was present at the hearing and was subject to meaningful cross-examination concerning Adams' parole violation by the use of heroin. The third element in the court's decision was evidenced by Adams' plea of guilty. The fourth element, Adams' arrest for two related assaults to murder, which were not prosecuted, was not denied by Adams, who did object to any inference, based on presentence report hearsay, that he was in fact guilty of those offenses.
The trial court made no finding that Adams was at sentencing addicted to heroin, so we do not consider whether heroin addiction would add to weight to the trial court's findings under Section 775.084. For the same reason we also disregard the presentence report's reference to Adams' use of a sawed-off shotgun in committing the 1971 armed robbery. For the same reason we disregard any charge or implication in the presentence report that Adams attempted to murder two acquaintances and intimidated them from testifying against him. Thus we are left with supported findings that Adams was convicted of armed robbery in 1971, violated his parole from prison by using heroin, possessed heroin and paraphernalia as charged on this occasion, and was arrested but not prosecuted for two other crimes.
Section 775.084(3)(d) provides that "each of the findings required as the basis of [an extended] sentence shall be found to exist by a preponderance of the evidence and shall be appealable to the extent normally applicable to similar findings." Although the sentencing court's findings may be stated in writing or at a reported hearing, as may be convenient, the statutory findings are essential. E.g., Phipps v. State, 352 So.2d 102 (Fla. 1st DCA 1977). In order that an appellate court may perform its duty to review the sentencing court's ultimate finding, that an extended sentence is necessary to protect the public from further criminal activity by the defendant, we must be apprised of the underlying facts and circumstances which the trial judge relied on in making that finding. Otherwise, the appellate court will be left with the hopeless task of determining from *59 the raw data in the presentence report and elsewhere what material might have influenced the trial judge to the ultimate finding; the appellate court cannot know what data was disregarded by the trial court as unreliable or unpersuasive; the appellate court cannot effectively determine what hearsay, possibly relied on, should have been corroborated by witnesses subjected to cross-examination; and, in a real sense, the appellate court will be put in a position of duplicating the sentencing function which is properly and exclusively that of the trial court.
The findings by the sentencing court in this instance are insufficient on their face to show that the public requires Adams' extended imprisonment for its protection against his further criminal activity. The sentences are therefore VACATED and the case is REMANDED for resentencing, conventionally or in accordance with Section 775.084.
MILLS, C.J., and SHAW, J., concur.
NOTES
[1] When statutory criteria are met, an extended term of life is authorized for first degree felonies; up to 30 years for second degree felonies; and up to 10 years for third degree felonies. Section 775.084(4)(a)1, 2, 3, Florida Statutes (1977).
[2] Section 775.084(1)(a), Florida Statutes (1977), provides in pertinent part:

(a) "Habitual felony offender" means a defendant for whom the court may impose an extended term of imprisonment, as provided in this section, if it finds that:
1. The defendant has:
a. Previously been convicted of a felony in this state;
b. Twice previously been convicted of a misdemeanor of the first degree in this state or of another qualified offense for which the defendant was convicted after the defendant's 18th birthday;
2. The felony for which the defendant is to be sentenced was committed within 5 years of the date of the conviction of the last prior felony, misdemeanor, or other qualified offense of which he was convicted, or within 5 years of the defendant's release, on parole or otherwise, from a prison sentence or other commitment imposed as a result of a prior conviction for a felony or other qualified offense, whichever is later... .
[3] Sections 775.084(3)(a), 921.231, Florida Statutes (1977); Fla.R.Crim.P. 3.710, 3.711, 3.712, 3.713.
[4] The record of Adams' conviction of armed robbery was part of the state's proof qualifying Adams for Section 775.084 sentencing. The "factual" portion of the pre-sentence report stated that a related charge of possession of a sawed-off shotgun was "dropped," evidently upon Adams' plea of guilty to armed robbery. The "confidential" section of the pre-sentence report stated that the armed robbery was committed "with a sawed off shotgun."
[5] The "factual" portion of the presentence report stated that Adams was discovered to be in possession of heroin and drug paraphernalia when he was arrested and charged with the attempted murder of two persons, one of whom identified him to the arresting officers. Nothing further concerning the attempted murder charges is said in the "factual" portion of the presentence report, although Detective Bradley is quoted as saying "the subject is a bad person and ... should be kept off the streets [and] receive as much time as possible in this case." The "confidential" portion of the pre-sentence report elaborated:

Detective J.A. Bradley had no doubt in his mind that the subject was involved in the shooting of two victims. According to Detective Bradley, the victims were apparently unwilling to follow through with prosecution of the subject due to their fear of him.. .
[6] The court noted before sentencing that perhaps the debate over Section 775.084 procedures "doesn't mean a thing," because without consideration of Section 775.084 Adams was subject to two five-year consecutive sentences for the two third degree felony convictions. Section 775.082(3)(d). At the time of Adams' sentencing, Chapter 76-66, Laws of Florida, authorized separate and consecutive sentences for violations of two criminal statutes in the same criminal transaction or episode. Section 775.021, Florida Statutes (1976 Supp.).
[7] The practice of inserting the more damaging hearsay factual recitations in the "confidential" section of the report, which is not made available as a matter of course to defense counsel, was the subject of Wood v. State, 357 So.2d 1060 (Fla. 1st DCA 1978).
[8] The Court stated in Williams, 337 U.S. at 249-250, 69 S.Ct. at 1084, 1085, 93 L.Ed. at 1343:

Their reports have been given a high value by conscientious judges who want to sentence persons on the best available information rather than on guesswork and inadequate information. To deprive sentencing judges of this kind of information would undermine modern penological procedural policies that have been cautiously adopted throughout the nation after careful consideration and experimentation. We must recognize that most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination... .
[9] The Colorado statute authorized extended imprisonment on one of two alternative grounds, one of which was "[the defendant] if at large, constitutes a threat of bodily harm to members of the public." We decline to join hair-splitting endeavors which would characterize Colorado's test as finding a fact, retrospectively determined, and distinguish Florida's test, a likelihood of "further criminal activity," as a prospective prediction and so exempt from Specht. Note, The Constitutionality of Statutes Permitting Increased Sentences for Habitual or Dangerous Criminals, 89 Harv.L.Rev. 356, 366 (1975) examines the pitfalls of such analysis.
[10] Huelsman, 588 P.2d at 400:

The procedural standards to which the second phase of an extended term sentence proceeding should be subject are those applicable to ordinary sentencing.
[11] In Bowdach, the Court of Appeals for the Fifth Circuit, in a thorough opinion by Judge Peter Fay, demonstrated the similarities of judicial functions in ordinary and extended term sentencing, thus suggesting difficulties in reconciling Williams and Specht. 561 F.2d at 1174, fn. 6. See also Note fn. 9 supra, 89 Harv.L.Rev. at 386, finding various accommodations of Williams and Specht problematic in either theory or practice, and concluding that Specht cannot be made effective without overruling Williams and extending full due process rights of confrontation and cross-examination to ordinary sentencing proceedings.
[12] Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), are analyzed in terms of the prior Specht ruling by Judge Fay in Bowdach, 561 F.2d at 1173. See also Hollis v. Smith, 571 F.2d 685 (2d Cir.1978), and Neary and Williamson, supra rejecting Specht-based claims for jury trial or proof beyond a reasonable doubt in extended sentence proceedings.
[13] Federal subsection (a) and Florida subsection (3)(b) correspond in requiring prior written notice to the defendant that consideration will be given to an extended term of imprisonment. The federal statute requires that the notice specify "with particularity the reasons why [the prosecuting] attorney believes the defendant to be a dangerous special offender"; the Florida statute does not require that specification.
[14] The sentencing judge stated:

Perhaps the Court is going through an act of futility because if you stop and think about it, as to count one [possession of heroin, punishable by imprisonment, for up to five years, Sections 893.03(1)(b), 893.13(1)(e)] with an enhanced penalty, Mr. Adams is looking at ten years ..., then if you look at both counts without the enhanced penalty, the Court could still impose ten by imposing five consecutive, so maybe I'm just going through this  perhaps it doesn't mean a thing, Mr. Adams.
[15] Specht, 386 U.S. at 609, 87 S.Ct. at 1212, 18 L.Ed.2d at 330, quoting U.S. ex rel. Gerchman v. Maroney, 355 F.2d 302, 312 (3d Cir.1966).
[16] Of simple recidivism statutes the Fifth Circuit said in Bowdach, 561 F.2d at 1175, the defendant "does not need the full due process protections afforded the accused in an ordinary criminal trial":

This is so because usually the only additional evidence against one charged with being a recidivist are tangible court records, and the accused's only defenses are that he is not the person mentioned in the previous convictions or that the convictions are void.
[17] United States v. Fatico, 579 F.2d 707, 713 (2d Cir.1978).
[18] United States v. Weston, 448 F.2d 626 (9th Cir.1971), cert. denied, 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972).
[19] United States v. Needles, 472 F.2d 652 (2d Cir.1973).
[20] The North Carolina kidnapping statute authorized a different range of imprisonment years when the victim was released unharmed. The court stated:

Whether the victim was released unharmed and in a safe place are facts which by their nature lend themselves to proof in open court by sworn testimony.[16] They are not the kind of "background information" normally found in presentence reports or psychiatric examinations.
[16] In most cases this evidence will likely be adduced during the trial of the kidnapping charge itself.